# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### June 13, 2001 Session

## ESTATE OF JULIE AMOS, ET AL. v. VANDERBILT UNIVERSITY, ET AL.

### Appeal by Permission from the Circuit Court for Davidson County
No. 90C-4158    Hamilton V. Gayden, Jr., Judge

---

### No. M1999-00998-SC-R11-CV - Filed December 20, 2001

---

We granted appeal in this case to determine whether the special proof requirements of <u>Camper v. Minor</u>, 915 S.W.2d 437, 446 (Tenn. 1996), extend to all negligence claims in which damages for emotional distress are sought as an item of compensatory damages. We hold that the special proof requirements of <u>Camper</u> apply only to "stand-alone" claims of negligent infliction of emotional distress. We further hold that Vanderbilt University Medical Center owed a duty to warn Julie Amos of her potential exposure to HIV so that she might take appropriate measures to protect third parties. We therefore reverse the judgment of the Court of Appeals and reinstate the trial court's judgment in this case.

### Tenn. R. App. P. 11 Appeal by Permission;
### Judgment of the Court of Appeals Reversed; Trial Court Judgment Reinstated

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Abby R. Rubenfeld, Nashville, Tennessee, A. Bruce Jones, Patricia Dean, and Stephen Masciocchi, Denver, Colorado, for the appellants, Estate of Julie Amos and Ronald Amos.

John S. Bryant and Steven E. Anderson, Nashville, Tennessee, for the appellee, Vanderbilt University, Inc. d/b/a Vanderbilt University Medical Center.

R. Sadler Bailey and C. Philip M. Campbell , Memphis, Tennessee, for the amicus curiae, Tennessee Trial Lawyers Association.

**OPINION**

**BACKGROUND**

In August of 1984, Julie Story underwent jaw surgery at Vanderbilt University Medical Center (Vanderbilt). Without Ms. Story's knowledge, she received four units of blood during surgery. One of those units was contaminated with human immunodeficiency virus (HIV), the virus causing acquired immunodeficiency syndrome (AIDS). At the time of Ms. Story's surgery, blood banks did not test blood for HIV,[1] and Vanderbilt had no policy requiring that patients be notified when they received blood during surgery.

By the spring of 1985, Vanderbilt began screening for HIV in blood to be used in transfusions. In 1987, Vanderbilt began offering free HIV testing to all patients who had received blood transfusions at its facility. It also established a procedure for notifying a patient when it learned that the patient had received blood from a donor who had tested positive for HIV. Vanderbilt did not undertake to identify and warn all prior patients who had received blood transfusions that they could be exposed to the HIV virus. Vanderbilt, therefore, did not notify Julie Story of any potential danger resulting from her surgery in August of 1984.

In February of 1989, Julie Story married Ron Amos. She gave birth to a daughter, Alison, on September 10, 1989. Alison became infected with HIV in utero. Alison died on November 25, 1989, as the result of pneumocystis, an AIDS-related virus that coats the walls of the lungs. Upon diagnosis of Alison's AIDS infection, Mrs. Amos was tested for HIV. The test results were positive. Before this testing, Mrs. Amos was unaware that she had HIV. Review of Mrs. Amos's medical records confirmed that she had received four units of blood during her 1984 surgery. The donor providing one of those units was also the donor of blood given to another transfusion recipient infected with HIV. Expert testimony at trial confirmed that Mrs. Amos was infected with HIV from the blood transfusion she received during her surgery at Vanderbilt in 1984.

On March 1, 1991, Mr. and Mrs. Amos[2] filed suit against Vanderbilt in the Davidson County Circuit Court.[3] Mr. and Mrs. Amos asserted causes of action for wrongful birth, negligence, and negligent infliction of emotional distress. They alleged that Vanderbilt was negligent in failing to warn Mrs. Amos that she was at risk for contracting HIV due to her blood transfusion during surgery at Vanderbilt.

---

[1] The antibody test for detecting HIV in blood was not developed until March of 1985.

[2] Julie Amos died of AIDS on April 30, 1992. Her claims were continued by Ron Amos on behalf of her estate.

[3] The Amoses originally filed suit against Vanderbilt and the American Red Cross, the supplier of the contaminated blood. The case was removed to the United States District Court for the Middle District of Tennessee. The Amoses subsequently settled their claims against the American Red Cross, and the case against Vanderbilt was remanded to the Davidson County Circuit Court.

On October 17, 1995, the trial court granted Vanderbilt's motion for summary judgment. The court found that the Amoses failed to present competent evidence to prove that Vanderbilt violated the medical malpractice statute, Tenn. Code Ann. § 29-26-115. The Court of Appeals reversed the trial court's decision, holding that Vanderbilt's failure to notify transfusion patients of the risk of HIV infection was not governed by the medical malpractice statute. On remand, the jury awarded the estate of Julie Amos $2,722,500 and Ron Amos $1,639,200. The Court of Appeals reversed the award to Ron Amos and modified the award to Julie Amos's estate. The court held that Vanderbilt owed no duty to Ron Amos. Because the Amoses failed to present expert or scientific testimony of serious or severe emotional injury, as required under this Court's decision in Camper v. Minor, 915 S.W.2d 437, 440 (Tenn. 1996), the court further held that the estate's award for emotional injuries could not stand. The Court of Appeals reduced the jury verdict in favor of Julie Amos's estate to $32,884.07, the amount of Alison's medical and funeral expenses. We granted review.[4]

## ANALYSIS

### I. The Camper Special Proof Requirements

In Camper v. Minor, 915 S.W.2d 437 (Tenn. 1996), this Court addressed the proper analysis of claims for negligent infliction of emotional distress without an accompanying physical injury. The plaintiff, Camper, was involved in an automobile accident in which a sixteen-year-old driver, Taylor, was killed when she pulled out in front of Camper's cement truck. Id. at 439. Camper filed suit against the administrator of Taylor's estate seeking damages for emotional injuries sustained as a result of viewing Taylor's body immediately following the accident. Id. Camper testified in his deposition that he suffered no physical injuries, other than a small scrape on his knee for which he received no medical treatment. Id.

This Court examined the law of negligent infliction of emotional distress in Tennessee and in other jurisdictions. Id. at 440-46. We abandoned the traditional "physical manifestation" rule previously applied in Tennessee. Id. at 446. Instead, we concluded that cases of negligent infliction of emotional distress should be analyzed under the "general negligence" approach. Id. In order to make out a prima facie case of negligent infliction of emotional distress, the plaintiff must prove the elements of duty, breach of duty, injury or loss, causation in fact, and proximate cause. Id. The

---

[4]Oral argument in this case was heard on June 13, 2001 in Nashville. Although Chief Justice Anderson was unavoidably absent from argument, the parties were informed in open court of his participation in the discussion and decision of this case pursuant to Rule 1(a)(ii) of the Internal Operating Procedures of the Tennessee Supreme Court:

> Absent exceptional circumstances, all members of this Court shall participate in the hearing and determination of all cases unless disqualified for conflicts. However, a hearing shall proceed as scheduled notwithstanding the unavoidable absence of one or more justices. Any justice who is unavoidably absent from the hearing may participate in the determination of the case either by teleconferencing, videoconferencing, or by reviewing the tape of oral argument, subject to the determination of the Chief Justice. Counsel shall be advised in open court that the absent justice will fully participate in the discussion and decision of the case.

Court further held that recovery for negligent infliction of emotional distress is limited to serious or severe emotional injury supported by expert medical or scientific proof. Id.

Vanderbilt contends that Camper's requirements of expert medical or scientific proof and serious or severe injury extend to all negligence claims resulting in emotional injury. We disagree. The special proof requirements in Camper are a unique safeguard to ensure the reliability of "stand-alone" negligent infliction of emotional distress claims. Camper, 915 S.W.2d at 440; see also Miller v. Willbanks, 8 S.W.3d 607, 614 (Tenn. 1999). The subjective nature of "stand-alone" emotional injuries creates a risk for fraudulent claims. Miller, 8 S.W.3d at 614 ("legitimate concerns of fraudulent and trivial claims are implicated when a plaintiff brings an action for a purely mental injury"); see Camper, 915 S.W.2d at 440. The risk of a fraudulent claim is less, however, in a case in which a claim for emotional injury damages is one of multiple claims for damages. When emotional damages are a "parasitic" consequence of negligent conduct that results in multiple types of damages, there is no need to impose special pleading or proof requirements that apply to "stand-alone" emotional distress claims. See Kush v. Lloyd, 616 So. 2d 415, 422-23 (Fla. 1992); see also Naccash v. Burger, 290 S.E.2d 825, 831 (Va. 1982); Phillips v. United States, 575 F. Supp. 1309, 1318-19 (D.S.C. 1983).

Even before Camper, a plaintiff could recover for emotional injuries as one of several items of compensatory damages. See, e.g., Smith v. Gore, 728 S.W.2d 738, 751-52 (Tenn. 1987) (in an action for wrongful pregnancy, plaintiffs could recover damages for medical expenses, pain and suffering, loss of wages, and emotional distress or mental anguish); Laxton v. Orkin Exterminating Co., Inc., 639 S.W.2d 431, 431, 434 (Tenn. 1982) (damages allowed for mental anguish, personal injury, and property damages resulting from the negligent contamination of plaintiffs' water supply); Roberson v. Univ. of Tenn., 829 S.W.2d 149, 152 (Tenn. Ct. App. 1992) (damages for gender discrimination included actual damages, damages for emotional distress, attorneys' fees, costs, and punitive damages). Before Camper, however, Tennessee courts did not allow recovery for mental injuries "without accompanying physical injury or physical consequences, or without other independent basis for tort liability." Laxton, 639 S.W.2d at 433. The Camper holding contemplated a plaintiff who was involved in an incident and received *only* emotional injuries. With its abandonment of the "physical manifestation" rule, the Camper Court opened the door for legitimate "stand-alone" claims of negligent infliction of emotional distress. See Laura J. Bradley, Case Note, Bain v. Wells, 936 S.W.2d 618 (Tenn. 1997), 65 Tenn. L. Rev. 293, 305. The Camper holding did not alter the longstanding rule that emotional injuries are compensable if accompanied by additional claims for damages. Imposing the more stringent Camper proof requirements upon all negligence claims resulting in emotional injury would severely limit the number of otherwise compensable claims. Such a result would be contrary to the intent of our opinion in Camper–to provide a more adequate, flexible rule allowing compensation for valid "stand-alone" emotional injury claims. Camper, 915 S.W.2d at 446.

In this case, the Amoses asserted three causes of action against Vanderbilt: wrongful birth, negligent failure to warn, and negligent infliction of emotional distress. Their claims for wrongful birth and negligent failure to warn included a request for damages for emotional injuries stemming

from those causes of action as well as a request for other damages. Their request for damages for emotional injuries is not a "stand-alone" claim and, therefore, is not subject to the special evidentiary requirements of Camper. This is not a case, like Camper, in which the damages alleged are for mental anguish alone. We therefore reverse that portion of the Court of Appeals' opinion holding that the Amoses failed to present adequate proof of their emotional injuries.

## II. Vanderbilt's Duty to Ron Amos

Mr. and Mrs. Amos were not yet married when Mrs. Amos received her blood transfusion or when, according to the Amoses' experts, Vanderbilt should have notified prior blood transfusion recipients. Vanderbilt therefore contends that it owed no duty to Mr. Amos.

This Court has recognized that a physician may owe a duty to a non-patient third party if the physician's negligence causes reasonably foreseeable injuries to the third party. Bradshaw v. Daniel, 854 S.W.2d 865, 870 (Tenn. 1993) (citing Wharton Transport Corp. v. Bridges, 606 S.W.2d 521, 526 (Tenn. 1980)). As we noted in Bradshaw, other jurisdictions have imposed upon physicians the duty to exercise reasonable care to protect third persons against foreseeable risks associated with a patient's contagious disease. Id. at 871; see also Vallery v. S. Baptist Hosp., 630 So. 2d 861, 868-69 (La. Ct. App. 1993) (court imposed a duty on behalf of a hospital to promptly warn an employee's spouse of the employee's negligent exposure to HIV because it was "highly foreseeable" that the employee might be married and have unprotected sexual relations with his spouse). We adopted a similar medical duty to warn identifiable third persons in a patient's immediate family against foreseeable risks attending that patient's noncommunicable disease. Bradshaw, 854 S.W.2d at 872.

"The foreseeable victim is one who is said to be within the zone of danger." Turner v. Jordan, 957 S.W.2d 815, 819 (Tenn. 1997) (quoting Hamman v. County of Maricopa, 775 P.2d 1122, 1128 (Ariz. 1989)). Unlike Bradshaw, we are faced here with the risk of exposure to a deadly communicable disease. The zone of danger in this case, therefore, is much larger than the zone of danger in Bradshaw. As a result, the identifiable third parties may be extended beyond the patient's immediate family members. "The imposition of a legal duty reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct." Id. at 870. It was reasonably foreseeable that Mrs. Amos would one day marry and have a family. Her future husband and daughter were within the class of identifiable third persons at risk for exposure to HIV. Cf. Turner, 957 S.W.2d at 820-21 (imposing a duty on a psychiatrist to take reasonable measures to protect a nurse in the psychiatric unit from the injuries she sustained at the hands of a dangerous patient); Wharton Transport Corp., 606 S.W.2d at 527 (injuries caused when truck collided into rear of family's station wagon were reasonably foreseeable consequence of physician's failure to properly conduct physical examination of truck driver).

The duty contemplated here is not one to warn Mr. Amos himself of Mrs. Amos's exposure to HIV but to warn Mrs. Amos so that she might take adequate precautions to prevent transmission

of the disease to Mr. Amos and their child.[5]  Vanderbilt's breach of that duty caused the reasonably foreseeable injuries suffered by Mr. Amos.  We therefore reinstate the trial court's award of damages to Mr. Amos.

## CONCLUSION

We hold that the special proof requirements outlined in Camper v. Minor, 915 S.W.2d 437, 446 (Tenn. 1996), apply only to "stand-alone" claims for negligent infliction of emotional distress. Plaintiffs, like the Amoses, who seek damages for emotional injuries as one of multiple claims for damages, therefore, are not required to meet the special proof requirements under Camper.  We further hold that Vanderbilt owed a duty to warn Mrs. Amos of her potential exposure to HIV so that she might avoid spreading the deadly disease to Mr. Amos and their daughter.  We therefore reverse the judgment of the Court of Appeals and reinstate the trial court's judgment in this case.  Costs of this appeal are taxed to the appellee, Vanderbilt University, Inc. d/b/a Vanderbilt University Medical Center, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

---

[5]Unlike the patient with Rocky Mountain Spotted Fever in Bradshaw, a patient with HIV may take precautions to avoid transmitting the disease to others.  It therefore is reasonable to require physicians to warn patients exposed to HIV of the potential dangers in order to protect third parties.