# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

March 15, 2005 Session

# TIMOTHY V. RILEY and SARAH RILEY v. RICHARD O. WHYBREW, SANDRA K PARKER, MARINA C. PARKER, FIVE JOHN DOES and FIVE JANE DOES

**An Appeal from the Circuit Court for Shelby County**
**CT-001707-00     Rita L. Stotts, Judge**

---

**No. W2004-02522-COA-R3-CV - Filed August 15, 2005**

---

This case is about nuisance and infliction of emotional distress. The plaintiff homeowners and their minor child lived in a house in a subdivision. The defendant landowner owned a house next door to the plaintiffs' home. The defendant landowner rented his house to tenants. The tenants allegedly began to engage in disturbing conduct, including illegal drug use, discharging firearms, and harassment. The plaintiffs sued the tenants and the defendant landowner for nuisance and for intentional and negligent infliction of emotional distress. The defendant landowner filed a motion for summary judgment, asserting that the plaintiffs had no medical evidence of their emotional distress. Counsel for the plaintiffs did not respond to the motion for summary judgment and did not notify the plaintiffs of the pending motion. The trial court granted summary judgment in favor of the landowner. The plaintiffs later got a new attorney and filed a motion to set aside this judgment. The trial court set aside the grant of summary judgment, to enable the plaintiffs to file a response. After the plaintiffs filed a response, the trial court again granted summary judgment in favor of the landowner. We affirm the grant of summary judgment as to the claim of intentional infliction of emotional distress, and reverse as to claims of nuisance and negligent infliction of emotional distress.

**Tenn. R. App. P. 3 Appeal as of Right; the Judgment of the Circuit Court is Affirmed in part and Reversed in part**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Barry W. Kuhn and Dwight T. Moore, Memphis, for plaintiffs/appellants Timothy V. Riley and Sarah Riley

Gary R. Wilkinson and C. Michael Becker, Memphis, for defendant/appellee Richard O. Whybrew

**OPINION**

Defendant/Appellee Richard Whybrew ("Whybrew") owned a house and lot located in Memphis, Tennessee. The house Whybrew owned was located next door to the home occupied by Plaintiff/Appellants Sarah and Timothy Riley ("Rileys") and their minor son.

In 1998, Whybrew rented the property to defendants Sandra K. Parker and Marina C. Parker ("Parkers"). Soon thereafter, the Rileys began experiencing problems with the Parkers.[1] A high volume of unknown persons would come to the Parkers' house at all hours of the day and night, with horns honking, tires squealing and loud voices. They would drive up, engage in a brief conversation or transaction with a resident at the Parkers' home, and leave after a few minutes. The Rileys overheard numerous conversations about the sale of drugs, as well as frequent profane and abusive language. On several occasions, firearms were discharged at the Parkers' residence at various times during day and night. Some activities were directed toward the Rileys; foreign objects and chemicals were put in the gas tanks of their automobiles, a laser pointer was aimed at Timothy Riley, personal property was stolen from the Rileys' home, and when the Rileys were seen by the Parkers, the Parkers or their visitors would taunt them, curse them or stare menacingly at them. In September 1999, the Rileys' dog was shot by a visitor to the Parkers' home. In October 1999, law enforcement officials conducted a raid on the Parkers' residence and defendant Marina Parker was arrested for possession of marijuana. Despite the arrest, the disturbing activities at the Parkers' home continued.

As a result, the Rileys employed an attorney to notify Whybrew of the problems. In early February 2000, the attorney sent Whybrew a letter informing him that his rental property was "being used for illegal activities, in violation of the housing and zoning codes, and probably in violation of the terms of [the] lease." Later in February 2000, Whybrew received a letter from J. Robert "Bobby" Carter, Jr. ("Carter"), Director of the Narcotics Prosecution Unit of the Office of the Shelby County Attorney General. Carter's letter also referred to the drug trafficking activities at the home Whybrew rented to the Parkers, and informed him that the Shelby County Sheriff's office had raided the Parkers' home on October 31, 1999 and had charged Marina Parker with unlawful possession of a controlled substance (marijuana). The letter noted that the amount of controlled substance found at the Parkers' home was not enough to compel Whybrew to evict the Parkers, but stated that Carter wanted Whybrew to be aware of the situation.

In March 2000, Sarah Riley contacted Whybrew to discuss the activities occurring on Whybrew's property. Whybrew allegedly responded that the Parkers had a lease and paid their rent on time, and he did not plan to take action against them.

---

[1]We note that the following actions of the Parkers were described in the Rileys' initial complaint and the statement of undisputed facts submitted to the trial court by Whybrew. The trial court relied on the statement of undisputed facts in granting the motion for summary judgment in favor of Whybrew. We make no determination regarding the veracity of the factual assertions. Statements from the Parkers are limited to their *pro se* response to the initial complaint.

In April 2000, the Rileys filed a lawsuit against Whybrew, the Parkers, and ten "John or Jane Doe" defendants. The suit detailed the illegal activities allegedly engaged in by the Parkers, including the use and sale of drugs on the premises, the discharge of firearms, sabotaging the Rileys' car by putting foreign objects in the gas tank, using foul and abusive language, shooting the Rileys' dog, and theft of the Rileys' property. The Rileys alleged that they pleaded with Whybrew to either evict his tenants from the property or force them to stop this behavior. Based on these allegations, the Rileys asserted that the Parkers and Whybrew were guilty of intentional infliction of emotional distress, and that Whybrew was guilty of negligence in permitting the Parkers' activities to continue. The Rileys sought compensatory damages, treble damages due to the "willful and wanton nature of the Defendant's behavior," and "abatement of the nuisance."

In May 2000, the Parkers filed a *pro se* response asserting that the Rileys' dog, a chow, had bitten Sandra Parker in the past, and that the dog escaped from the Rileys' yard and attacked a friend of the Parkers. The Parkers alleged that their friend shot the dog in self defense. The Parkers maintained that they were not drug dealers, but were charged only with possession of marijuana when the police raided their home in October 1999, and noted that police had found no weapons or stolen property on the premises during the raid. The Parkers' response stated that Whybrew had asked them to vacate the premises "just to passify [sic] the situation." Apparently, during this time period between April and June 2000, the Parkers moved out of the house, shortly after being served with the lawsuit.

In his response to the Rileys' complaint, Whybrew asserted that the other defendants were the sole cause of any injuries suffered by the Rileys. Whybrew maintained that the Rileys failed to state a claim upon which relief could be granted and asked the trial court to dismiss the complaint.

Discovery ensued. In October 2000, Whybrew submitted interrogatories to the Rileys. In November 2001, Whybrew took the depositions of both of the Rileys. After the Rileys' depositions, on April 10, 2002, Whybrew filed a motion for summary judgment.

On the same day, Whybrew filed a statement of undisputed facts in support of the summary judgment motion. In this statement, Whybrew asserted that the activities of which the Rileys complained occurred between June 1999 and November 1999, and that the Rileys had admitted that Whybrew was not present during any of these activities. Whybrew stated that he first received notice of the illegal activities when he was contacted by the Rileys' attorney in February 2000, and that Sarah Riley phoned Whybrew in March 2000 to complain about the Parkers. The statement of undisputed facts noted that the Rileys sought to recover damages from Whybrew for intentional infliction of emotional distress and negligent infliction of emotion distress, and that neither of the Rileys had sought medical, psychological, or psychiatric treatment for injuries related to the claim. Whybrew sought summary judgment based on this statement of undisputed facts and the depositions of Sarah and Timothy Riley.

The Rileys did not at that time file a response to Whybrew's motion for summary judgment, nor did they dispute the assertions in Whybrew's statement of Undisputed Facts. A hearing on the

motion was held on July 12, 2002, and counsel for both the Rileys and Whybrew appeared. On August 5, 2002, the trial court granted summary judgment in favor of Whybrew.

In July 2003, after hiring a new attorney, the Rileys filed a petition to set aside the grant of summary judgment under Rule 60.02 of the Tennessee Rules of Civil Procedure. The Rileys alleged that the attorney who filed the lawsuit on their behalf failed to notify them of Whybrew's motion for summary judgment and failed to respond to the motion, due in part to the death of the attorney's father. The Rileys alleged that they learned of the dismissal of their claims against Whybrew in November 2002, after they contacted their attorney to inquire about the status of their case. After they were told of the dismissal, the Rileys obtained new counsel in an attempt to continue the suit against Whybrew. In support of their petition to set aside the summary judgment, the Rileys attached a copy of the letter written to Whybrew by Assistant Attorney General Bobby Carter.

The trial court heard arguments on the petition to set aside the grant of summary judgment on April 27, 2004. The Rileys' original attorney, Mr. James Gordon, testified about the reasons for his failure to file a response to Whybrew's motion for summary judgment or the Statement of Undisputed Facts. At the conclusion of the hearing, the trial judge, characterizing it as a "close case," set aside the summary judgment "for the limited purpose of allowing [the Rileys] to file a response for the motion for summary judgment." A hearing on the summary judgment motion was set for May 27, 2004.

On May 10, 2004, the Rileys filed a notice to take Whybrew's deposition. Whybrew immediately moved to quash the deposition notice, arguing that the trial court set aside the grant of summary judgment "for the limited purpose of allowing [the Rileys] to file a Response to the motion." Whybrew argued that, in seeking to take Whybrew's deposition, the Rileys were attempting to introduce new evidence into the record that did not exist when the motion for summary judgment was originally filed.

On May 18, 2004, the Rileys filed their response to Whybrew's motion for summary judgment. In support of their response, the Rileys filed their own affidavits and a response to Whybrew's statement of undisputed facts. The response indicated that the Parkers' objectionable activities continued after Whybrew received the letter from the Rileys' attorney. In addition, the Rileys filed a motion to compel Whybrew's deposition, asserting that the deposition was necessary to gain relevant information to respond to Whybrew's motion for summary judgment. The Rileys also sought a continuance on the May 27 hearing on the summary judgment motion, to permit them time to depose Whybrew before the hearing.

On May 21, 2004, the Rileys filed a motion to amend and supplement their original complaint. The amended complaint further detailed the Rileys' claim of nuisance against Whybrew, asserted that the Parkers' activities and Whybrew's failure to abate them resulted in a diminution in the value of the Rileys' property, and asserted that the Rileys suffered additional harm after the filing of the original complaint. Not surprisingly, Whybrew opposed amending the complaint, alleging that permitting the amendment would only insert new issues into the record that were not present when the motion for summary judgment was filed.

On June 4, 2004, the trial court entered a written order memorializing its oral ruling on the Rileys' Rule 60 petition to set aside the summary judgment in favor of Whybrew. The order stated that the trial court had set aside its grant of summary judgment to Whybrew "for the limited purpose of allowing the [Rileys] to file a response to the Motion for Summary Judgment filed on behalf of the Defendant, Richard O. Whybrew." By order dated June 10, 2004, the trial court denied the Rileys' motion to amend their complaint.

On June 25, 2004, the trial court, based upon the entire record, again granted summary judgment to Whybrew and dismissed the case against him with prejudice. The trial court made the order final as to Whybrew. In August 2004, the Rileys entered a voluntary non-suit as to the defendant Parkers and five defendant John Does and five defendant Jane Does. The Rileys now appeal the grant of summary judgment as to Whybrew.

On appeal, the Rileys assert that the trial court erred in granting summary judgment to Whybrew, in refusing to permit the Rileys to take Whybrew's deposition, and in refusing to allow amendment of the Rileys' original complaint.

A motion for summary judgment should be granted only when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 [now Rule 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

The standard of review for a trial court's decision regarding permission to amend the complaint, as well as a pre-trial discovery issue such as the motion to compel Whybrew's deposition, is an abuse of discretion standard. *Harden v. Danek Medical,* Inc., 985 S.W.2d 449, 454 (Tenn. Ct. App. 1998); *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 42 (Tenn. 2005). An abuse of discretion occurs when the trial court reaches a decision against logic that causes a harm to the complaining party or when the trial court applies an incorrect legal standard. *Eldridge v. Eldridge*, 72 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). The decision of the trial court "will be upheld so long as reasonable minds can disagree as to the propriety of the decision [of the trial court]." *State v. Scott*, 33 S.W.3d 746, 751 (Tenn. 2000).

On appeal, the Rileys first assert that the trial court erred in granting summary judgment to Whybrew on their claim for intentional infliction of emotional distress, asserting that there are disputed issues of material fact. The Rileys cite *Miller v. Wilbanks*, 8 S.W.3d 607 (Tenn. 1999), for the proposition that, in order to recover for damages for intentional infliction of emotional distress, they are not required to submit *ex parte* medical or scientific proof of serious mental injury. *See Miller v. Wilbanks*, 8 S.W.3d 607, 613-614 (Tenn. 1999). Regardless, in this case it is undisputed that Whybrew was not present during the Parkers' alleged activities and there is no allegation that he instigated them. The Rileys allege inaction by Whybrew, that is, failure to stop the actions of his tenants. Even assuming that Whybrew had knowledge of the Parkers' illegal activities, his failure to stop them can only be characterized as negligence; no reasonable trier of fact could find that Whybrew's failure to act constituted the intentional infliction of emotional distress. As such, the Rileys' claim against Whybrew for intentional infliction of emotional distress must fail. Accordingly, the trial court correctly granted summary judgment in favor of Whybrew on this issue.

The Rileys further allege that the trial court erred in granting Whybrew summary judgment on the issue of negligent infliction of emotional distress. Whybrew cites *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996), for the proposition that a plaintiff claiming negligent infliction of emotional distress must prove serious emotional injury by medical or scientific proof unless there is also an accompanying physical injury. *Camper*, 915 S.W. 2d at 446. Whybrew notes that the Rileys acknowledge that they never received medical treatment for their claimed emotional distress.

The Rileys respond that the medical or scientific proof required under *Camper* is only necessary for a "stand alone" claim for negligent infliction of emotional distress, citing *Amos v. Vanderbilt Hospital*, 62 S.W.3d 133, 134 (Tenn. 2001). In *Amos*, the court stated that the special proof requirement in *Camper*, *i.e.* the requirement that the claim of serious emotional injury be supported by expert medical or scientific proof, is "a unique safeguard to ensure the reliability of 'stand-alone' negligent infliction of emotional distress claims." *Amos*, 62 S.W.3d at 137. It observed that the risk of a fraudulent claim for damages for emotional injury is less in a case in which there are multiple claims for damages: "When emotional damages are a 'parasitic' consequence of negligence conduct that results in multiple types of damages, there is no need to impose . . . proof requirements that apply to 'stand-alone' emotional distress claims." *Id.* While the *Camper* court abandoned the "physical manifestation" rule, the *Amos* court noted, the "*Camper* holding did not alter the longstanding rule that emotional injuries are compensable if accompanied by additional claims for damages." *Id.*

The Rileys assert that a claim for property damage may be sufficient to obviate the need for expert medical or scientific proof to support the claim for negligent infliction of emotional distress. They cite *Laxton v. Orkin Exterminating Company, Inc.*, 639 S.W.2d 431 (Tenn. 1982), cited in *Amos*, in support of the assertion that "[e]ven before *Camper*, a plaintiff could recover for emotional injuries as one of several items of compensatory damages." *Amos*, 62 S.W.3d at 137. *See, e.g.*, *Smith v. Gore*, 728 S.W.2d 738, 751-52 (Tenn. 1987); *Laxton v. Orkin Exterminating Co., Inc.*, 639 S.W.2d. 431, 434 (Tenn. 1982); *Roberson v. Univ. of Tenn.*, 829 S.W.2d 149, 152 (Tenn. Ct. App. 1992). In *Laxton*, the plaintiffs sued an exterminating company for poisoning their water supply. *Laxton*, 639 S.W.2d at 431. The plaintiffs lived in a rural area and used a local spring as their water supply. *Id.* at 432. They hired an exterminating company to treat their house for termites. *Id.* at 432. Later, the plaintiffs noticed that their water had a foul smell and taste, so they contacted an environmentalist to test their water. *Id.* The tests showed that the water had been contaminated and the plaintiffs were told not to use the water for any reason. *Id.* After a period of time, the water became usable again and the plaintiffs returned to their normal use of the spring water. *Id.* However, after a heavy rain, the plaintiffs again found that their water had a foul taste and smell; additional testing showed that the water was again unfit for consumption. *Id.* At that point, the plaintiffs were advised to find a new source for their water supply. *Id.* In the interim, however, the plaintiffs and their children had been ingesting the contaminated water for some time; consequently, the plaintiffs began to worry about their health and the health of their children. *Id.* at 433. Later medical testing of the plaintiffs and their children showed no abnormalities resulting from the contaminated water. *Id.*

At trial, the plaintiffs were awarded damages for property damage, out-of-pocket expenses, and mental anguish. *Id.* at 431. The Court of Appeals affirmed the plaintiffs' judgment for property damages and out-of-pocket expenses but reversed the award for mental anguish under the theory that there can be no recovery for shock or fright unless it is accompanied by physical injury or pain. *Id.* at 432 (citing *Memphis St. Ry. Co. v. Bernstein*, 194 S.W. 902 (Tenn. 1917)). On further appeal, the Tennessee Supreme Court reinstated the award for mental anguish, holding that the "finder of fact may conclude that the plaintiff has sustained sufficient physical injury to support an award for mental anguish even if subsequent medical diagnosis fails to reveal any other physical injury." *Id.* at 434. However, the *Laxton* court noted that the period of injury was limited to the time between discovery of the ingestion of the chemicals and the medical diagnosis that showed no injury. *Id.*

In the instant case, the Rileys claim mental anguish due to the actions of the Parkers and that the Parkers' activities constituted a nuisance and that Whybrew, as landlord, maintained a nuisance by negligently allowing the Parkers' behavior to continue. The claim of negligent infliction of emotional distress against Whybrew is related to the claim of negligence for his failure to abate the nuisance caused by the Parkers. *See Lane v. W. J. Curry & Sons*, 92 S.W.3d 355 (Tenn. 2002) ("Tennessee's definition of private nuisance is typical of how most states have defined the tort. . ."), (citing *Restatement (Second) of Torts* § 821D (1979)). As such, the Rileys' claim for damages for emotional distress is not a stand alone claim and the *Camper* requirement of expert medical or scientific proof is not applicable.

Whybrew argues that there was no breach of any duty to the Rileys because there is no proof that he was aware of the Parkers' illegal activities until February 2000, and the Parkers moved from the residence after being served with this lawsuit, in approximately April 2000. Apparently Whybrew contends that this time period was too short for Whybrew's negligence to be actionable. We disagree, and hold that the Rileys have established a genuine issue of material fact on the claims of maintaining a nuisance and negligent infliction of emotional distress, sufficient to withstand a motion for summary judgment. Consequently, the grant of summary judgment in favor of Whybrew on these claims must be reversed.

The Rileys claim further that the trial court erred in refusing to permit them to depose Whybrew and to amend their complaint. In the trial court below, the trial court declined to permit the Rileys to do so, apparently in light of its decision to set aside the earlier grant of summary judgment only for the limited purpose of permitting the Rileys to file a response to the summary judgment motion. In view of our partial reversal of the grant of summary judgment, it is likely on remand that the trial court's ruling on these issues will be reconsidered, particularly on whether deposing Whybrew is necessary to determine whether Whybrew had knowledge of the Parkers' illegal activities prior to receipt of the February 2000 letter from the Rileys' attorney. Consequently, we find it unnecessary to address these issues on appeal.

In sum, the trial court's grant of summary judgment to Whybrew is affirmed as to the claims of intentional infliction of emotional distress, and reversed as to the claims for maintaining a nuisance and negligent infliction of emotional distress. The remaining issues on appeal are pretermitted.

The decision of the trial court is affirmed in part and reversed in part, as set forth above, and the cause is remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to the Plaintiffs/Appellants, Sarah and Timothy Riley, and their surety, and one-half to Defendant/Appellee Richard Whybrew, for which execution may issue if necessary.

HOLLY M. KIRBY, JUDGE

-8-