IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 16, 2005 Session

## DANNY R. COLEMAN v. STEPHANIE D. WILWAYCO, M.D., ET AL.

Appeal from the Circuit Court for Davidson County
No. 03C-2603     Thomas Brothers, Judge

No. M2005-00075-COA-R3-CV - Filed January 17, 2006

The unsuccessful plaintiff brings this appeal from the trial court's grant of summary judgment in favor of the defendants, Stephanie Wilwayco, M.D., and St. Thomas Family Health Center.  Upon *de novo* review we affirm the action of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Lawrence H. Hart, Nashville, Tennessee, for the appellant, Danny R. Coleman.

Mary Martin Schaffner, Nashville, Tennessee, for the appellees, Stephanie D. Wilwayco, M.D., and Saint Thomas Family Health Center.

## OPINION

The appellant, Danny Coleman, a patient of the defendant, Dr. Stephanie Wilwayco, was first tested for Hepatitis in September of 2000 following his wife's disclosure of infidelity and a life style characterized by sexual risk taking and intravenous drug use.  Mr. Coleman was distressed and, despite the absence of health insurance, sought evaluation and treatment from Dr. Wilwayco and St. Thomas Family Health Center, a facility serving the uninsured and underinsured.  According to the Complaint, Dr. Wilwayco diagnosed Mr. Coleman as suffering from Hepatitis C:

> 5.  This cause of action arises in tort from injuries and damages suffered by the Plaintiff as a result of negligence and medical malpractice committed by the Defendants while providing medical care to the Plaintiff in Davidson County, Tennessee.
>
> 6.  In late September of 2000, the Defendant, Dr. Wilwayco had the Plaintiff tested for hepatitis C.  The laboratory test results indicated the Plaintiff was

"REACTIVE" for "HEPATITIS C ANTIBODY. Based on this test result, Dr. Wilwayco diagnosed the Plaintiff as suffering from hepatitis C.

7. In February of 2003, the Plaintiff was again tested for hepatitis C and the results were negative. Dr. Wilwayco informed the Plaintiff that he did not have hepatitis C.

8. The Plaintiff charges that Dr. Wilwayco negligently and recklessly misdiagnosed him a[s] suffering from hepatitis C because:
A. The laboratory testing results that she received for the Plaintiff in September of 2000 did not necessarily mean that the Plaintiff had hepatitis C and the test stated on its face that, "FALSE POSITIVE TESTS RESULTS DO OCCUR SO SUPPLEMENTARY TESTING, SUCH AS AN IMMUNOBLOT ASSAY, SHOULD BE CONSIDERED."
B. Dr. Wilwayco failed to conduct any further testing, such as an immunoblot assay, to confirm the positive result in his initial laboratory test. Said further testing would have revealed that the Plaintiff was not suffering from hepatitis C.

9. The Defendants' negligence, recklessness, and malpractice directly and proximately caused the Plaintiff to suffer for approximately two and a half years from the mental pain and trauma of being falsely diagnosed with hepatitis C which resulted in a significant reduction of his capacity to enjoy life.

10. The Plaintiff alleges that:
A. The Defendants' medical treatment of the Plaintiff failed to meet the recognized standard of acceptable professional practice for the diagnosis of hepatitis C.
B. The Defendants acted with less than or failed to act with ordinary and reasonable care in accordance with the recognized standard of practice for the diagnosis of hepatitis C.
C. As a proximate result of the Defendants' negligent and reckless acts or omissions, the Plaintiff suffered injuries and damages that otherwise would not have occurred.

After discovery and party depositions, the defendants filed their Motion for Summary Judgment:

The grounds for this motion are there is no dispute as to any material fact that plaintiff did not sustain serious or severe mental injury as a result of the alleged negligence and that defendants are entitled to a judgment in their favor as a matter of law.

The sole ground upon which Defendants based their motion was the absence of any proof that Plaintiff had suffered a serious or severe emotional injury as a result of any alleged negligence consistent with *Camper v. Minor*, 915 S.W.2d 437 (Tenn.1996). For the purpose of the motion, Defendants were willing to concede negligence. In response to the Motion for Summary Judgment, Mr. Coleman relies on Dr. Wilwayco's patient encounter note dated April 25, 2001. This note indicates only a diagnosis of hepatitis, fatigue and possible depression. Other than this note and Plaintiff's own deposition testimony, there is no other proof regarding the severity of his alleged emotional injury or that any injury was proximately caused by the alleged misdiagnosis.

After argument, the trial court granted the motion, finding in pertinent part:

> After reviewing the record as a whole and hearing argument of counsel the court is of the opinion that plaintiff has asserted a claim for negligent infliction of emotional distress and finds there is no factual dispute that plaintiff did not suffer physical injury as a result of the alleged negligence. The court further finds plaintiff has not produced expert medical or scientific proof that plaintiff sustained serious or severe emotional injury as a result of the alleged negligence. The court, therefore, finds that defendants are entitled to a judgment in their favor as a matter of law.

After the entry of summary judgment, Plaintiff filed a Motion to Alter or Amend the Judgment. Contemporaneous with this Motion, Plaintiff filed the affidavit of Dr. Michael Baron. The court denied this motion December 17, 2004:

> Having reviewed plaintiff's motion, including the attached physician's affidavit, defendants' response to the motion, and the record as a whole, the court is of the opinion that (1) plaintiff has not made sufficient showing utilizing the five factors set forth in *Harris v. Chern* to justify setting aside defendants' summary judgment, and (2) the physicians' affidavit is deficient under T.C.A. § 29-26-115(b) in that all essential elements are not set forth in the affidavit. The court is further of the opinion that plaintiff's oral motion to continue the hearing in order to correct the deficiencies in the physician's affidavit is without merit.

From the entry of these two orders, Mr. Coleman appeals raising the following issues:

### ISSUE NO. 1
WAS THE PLAINTIFF'S CLAIM FOR EMOTIONAL DAMAGES A "STAND ALONE" CLAIM AS ASSERTED BY THE DEFENDANTS' SUMMARY JUDGMENT MOTION?

### ISSUE NO. 2
DID THE DEFENDANTS' MOTION NEGATE THE PLAINTIFF'S CLAIM FOR MENTAL INJURIES FROM THE HEPATITIS MISDIAGNOSIS BY SHOWING

THAT THE DIAGNOSIS HAD NOT CAUSED THE PLAINTIFF ANY "PROBLEMS OR DEPRESSION?"

<u>ISSUE NO. 3</u>
IN THEIR SUMMARY JUDGMENT PLEADINGS, DID THE DEFENDANTS MEET THEIR BURDEN OF DEMONSTRATING THAT NO GENUINE DISPUTE OF MATERIAL FACT EXISTED?

<u>ISSUE NO. 4</u>
DID THE COURT ERR IN DENYING THE PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT?

The Supreme Court has stated the following with regard to the standards applicable to our review of this summary judgment grant:

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. Tenn. R.Civ. P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993). We review the summary judgment motion as a question of law in which our inquiry is *de novo* without a presumption of correctness. *Finister v. Humboldt General Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). We must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Byrd*, 847 S.W.2d at 210-11. If both the facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion, then summary judgment is appropriate. *Robinson*, 952 S.W.2d at 426; *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997).

*Seavers v. Methodist Medical Center of Oak Ridge*, 9 S.W.3d 86, 90-91 (Tenn.1999).

In *Dunham v. Stones River Hospital, Inc., et al.*, the Court provided additional guidance:

> In order to prevail on a motion for summary judgment, the moving party must demonstrate that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn.R.Civ.P. 56.04. Once the moving party has satisfied this burden, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute warranting a trial. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn.1993). The nonmoving party cannot simply rely upon his pleading, but must set forth specific facts evidencing a genuine issue of material fact for trial. *Id.* at 211.

>       . . .

Proof of injury alone is not sufficient to survive a motion for summary judgment in a medical malpractice action. *Howse v. State*, 994 S.W.2d 139, 141 (Tenn.Ct.App.1999). The plaintiff has the burden of proving by expert testimony (1) the recognized standard of acceptable professional practice, (2) that the defendant deviated from that standard, and (3) that as a proximate result of the defendant's negligent act of omission, the plaintiff has suffered injuries which would not otherwise have occurred. Tenn.Code Ann. § 29-26-115. Summary judgment in a medical malpractice case may be appropriate where the defendant produces expert proof that completely refutes the plaintiff's allegations of negligence and the plaintiff does not produce rebuttal proof by expert testimony. *Dolan v. Cunningham*, 648 S.W.2d 652, 653 (Tenn.Ct.App.1982).

*Dunham v. Stones River Hospital, Inc., et al.*, 40 S.W.3d 47, 51 (Tenn.2000).

The misdiagnosis of a medical condition will not, in and of itself, support a claim for injury without a showing that the applicable standard of care is breached. "Liability for malpractice is dependent upon whether the physician is lacking in and fails to exercise the reasonable degree of learning, skill, and experience that is ordinarily possessed by others of his profession." *Dunham*, 40 S.W.3d at 52. Likewise, it bears noting that the only specific injury alleged by Mr. Coleman in his Complaint is the "mental pain and trauma" resulting from having been diagnosed with hepatitis C for 2 ½ years. The specific act of negligence pleaded in Mr. Coleman's Complaint is Wilwayco's failure to conduct a confirmatory test in light of a warning that the initial test had an identified propensity for false positive results. As pretrial discovery progressed, plaintiff and defense depositions were taken, and defense obtained discovery of Mr. Coleman's medical records from subsequent treatment at the Village at Vanderbilt. Dr. Wilwayco's medical records disclose no treatment regimen for hepatitis C, and indeed no treatment was pursued. Based on this diagnosis, however, Mr. Coleman argues that he divorced his wife, quit his job because of his fears of infecting others, and was notified by a prospective insurer that he was uninsurable.

His deposition testimony suggests that his departure from work was several months after the purported diagnosis, that he had been experiencing symptoms of depression prior to the alleged misdiagnosis, and that he was contemplating divorce from his wife when he sought treatment from Dr. Wilwayco. In response to the Motion for Summary Judgment challenging the existence of any serious emotional injury proximately caused by Dr. Wilwayco's alleged negligence, Mr. Coleman presents the following by way of affidavit:

3. The Hepatitis C diagnosis affected me very deeply because I believed I had an uncurable disease that was going to get worse and worse until I died from it, shortening my life. In addition, since I knew that the only way I could have gotten the Hepatitis C was from my wife because she had been my only sexual partner since we got married in 1978, it proved to me that she had been unfaithful yet I had to suffer for it. The Hepatitis C diagnosis resulted in symptoms that include, but not limited to:

a. Loss of desire for sex.
b. Loss of self-worth.
c. Loss of desire to work.
d. Loss of interest in hobbies and recreational activities.
e. Difficulty with concentrating and sleeping.
f. Constant anxiety related to how sick I would get from the Hepatitis C.
g. Depression related to how sick I would get and the shortening of my life from Hepatitis C.

The above symptoms started after my Hepatitis C diagnosis in October of 2000 by Dr. Wilwayco and got worse as time went on. In April of 2001, I went to see Dr. Wilwayco and told her about the symptoms listed above which had resulted from the Hepatitis C diagnosis. I also told her that the Hepatitis C diagnosis had caused me to file for divorce against my wife because I realized that she was the only person I could have gotten the Hepatitis C from and that proved to me that she had been unfaithful. Dr. Wilwayco discussed with me how the Hepatitis C diagnosis had resulted in me becoming depressed and anxious. She prescribed the antidepressant, Prozac. She had me on Prozac and then on another antidepressant.

The first issue raised on appeal asked the question, "Was the plaintiff's claim for emotional damages a 'stand-alone' claim as asserted by the defendant's motion for summary judgment?" Whatever might be said of the allegations of the complaint, it is unquestioned and unquestionable that throughout the trial court proceedings all counsel treated the claim as one based on *Camper v. Minor*, 915 S.W.2d 437 (Tenn. 1996) and not a claim for, "parasitic" damages under *Estate of Amos v. Vanderbilt University*, 62 S.W.3d 133 (Tenn. 2001). Thus, what is before this Court is indeed a "stand-alone" claim as such a claim is established in *Camper v. Minor* and limited by *Estate of Amos v. Vanderbilt University*. In this context for the purpose of summary judgment defendant conceded the allegations of negligence. The motion for summary judgment was argued on September 3, 2004 and the record of that argument reflects:

COURT:      Well, the expert medical proof that you relied upon is this letter from Vanderbilt?

HART:        No, it is Dr. Wilwayco prescribing antidepressants, the physician–his physician describing him antidepressants for his depression.

COURT:      So the defendant's actions in prescribing the antidepressants is what you rely on as your "expert proof" of severe emotional injury in the event this is not a physical–I find there is not a physical manifestation of it?

HART: Yes, she was his treating physician, she prescribed him Prozac and other antidepressants for depression and I, I, I find it inconceivable that that would not be considered serious. If you have depression that is, uh, significant enough to require an antidepressant–it is a serious matter, serious.

In its ruling from the bench the trial court made the following statements:

I found there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law. There is not sufficient proof showing that there is a physical manifestation of serious and severe emotion injury. There is no expert proof that has been submitted to support a finding. I do not find that the, uh, a prescription of the medication supplies that necessary element–which requires just an affidavit from somebody whose talked to your client and said, "I've talked to Mr. Coleman and because he got misdiagnosed, he's suffering from severe emotional injury and then it becomes a fact question and you go and you challenge it but I need someone to say that. It's got to be supported by it. Anxiety, loss of sexual desire, the things he has catalogued there – those are all internal manifestations of – and I'm not saying he doesn't feel depressed or has some problems – but the law requires that there be a physical manifestation of it, uh, or that it be supported uh, by this expert proof and it's not – neither of those exists, uh, and, uh, for those reasons I think that the defendant's entitled to a judgment as a matter of law, so, Ms. Schaffner, if you will prepare the order, please.

After entry of summary judgment, the plaintiff filed a motion to alter or amend, which was heard on December 3, 2004. In argument before the court, counsel stated the following:

HART: Good morning, your Honor, I am Lawrence Hart of the Nashville Bar. This is the plaintiff's motion to alter or amend judgment. If the court will recall, the defendant filed a motion for summary judgment and it was based, uh, alleging that there was no proof in the record of serious or severe emotional injury, their motion was based on the medical records and the plaintiff's deposition. We filed a response, uh, disputing these factual allegations, based on the response that if there was evidence in Mr. Coleman's deposition and in the medical records of serious or severe mental injury and in additional submitted an affidavit from Mr. Coleman. The court held that in order to–we, we needed to produce a physician's affidavit, uh, holding that he had suffered, in effect, severe or serious emotional injury and so that's the reason for our motion to alter judgment, so following the court's instruction we submitted an affidavit from a physician providing that information.

The affidavit filed with the motion to alter or amend provided:

1.  My name is Michael Baron and I am licensed to practice medicine in the state of Tennessee.

2.  I have seen Mr. Danny Coleman as a patient and have knowledge of his history of being misdiagnosed with Hepatitis-C by Dr. Stephanie Wilwayco from September of 2000 until February of 2003.

3.  I am aware of the emotional distress that Mr. Coleman suffered as a result of being misdiagnosed with Hepatitis-C and I have reviewed the attached Affidavit of Danny Coleman regarding his resulting emotional distress. It is my opinion, based on a reasonable degree of medical certainty, that the emotional distress as described to me by Mr. Coleman and as described in his Affidavit constitutes serious or severe emotional distress.

Plaintiff offers no reason by affidavit or otherwise why the affidavit of Dr. Baron was not presented prior to the September 3, 2004 hearing on the motion for summary judgment. At the December 3, 2004 hearing on the motion to alter or amend the following occurred:

COURT:   There is no physical manifestation associated with this emotional problem–is that correct?

HART:    Yes.

COURT:   Isn't there case law such that requires that in such situations you have these allegations supported by medical expert opinion?

HART:    Yes, your honor.

COURT:   That's the way I interpreted their motion–that she didn't have any, the required medical support for this, uh, and the, whether we agree with it or not, case law indicates you've got to have a, a physician to opine that this was a serious emotional injury, unless you have the physical manifestation that's attached to it.

HART:    I, I don't disagree with that, your honor, I guess when they said in support of their motion, the defendants rely on the deposition of the plaintiff's, and Vanderbilt's medical records for Mr. Coleman. And so, the way I look at it, is, they're saying to this court, there's nothing in these records, now they don't say that a physician has reviewed his records and come to this conclusion at all, they're saying–we're saying–actually the defendant's counsel is saying – there's nothing in

-8-

> these records that shows any serious emotional injury. And my response–that's neither making factual allegations about the records.

There is no mention in either argument on the motion for summary judgment or argument on the motion to alter or amend that suggests plaintiff was pursuing the "parasitic" emotional damages claim discussed in *Amos v. Vanderbilt*, 62 S.W.3d 133 (Tenn.2001). It was not until briefs were filed in this court that counsel for Mr. Coleman ever raised the holding in *Amos* as an appropriate theory for relief. Mr. Coleman cannot be heard to advance a theory here that was not advanced in the trial court. *Tamco Supply v. Portland*, 37 S.W.3d 905 (Tenn. Ct. App. 2000).

The trial court held that no showing of due diligence had been made to explain why the affidavit of Dr. Baron had not been submitted earlier and further, that the affidavit was deficient under Tennessee Code Annotated Section 29-26-115(b). The action of the trial court relative to the timeliness of the affidavit was based on factors established by the Supreme Court in *Harris v. Chern*, 33 S.W.3d 741 (Tenn. 2000). That case held:

> When additional evidence is submitted in support of a Rule 54.02 motion to revise a grant of summary judgment, a trial court should consider, when applicable: 1) the movant's efforts to obtain evidence to respond to the motion for summary judgement; 2) the importance of the newly submitted evidence to the movant's case; 3) the explanation offered by the movant for its failure to offer the newly submitted evidence in its initial response to the motion for summary judgment; 4) the likelihood that the nonmoving party will suffer unfair prejudice; and 5) any other relevant factor.

*Harris v Chern*, 33 S.W.3d 741, 745 (Tenn.2000) (as quoted in *Kenyon v. Handal*, 122 S.W.3d 743, 763 (Tenn.Ct.App.2003)).

It is also well settled that when such a decision hinges upon the qualifications or competency of an expert, we review that decision under an abuse of discretion standard.

> Decisions regarding the qualifications or competency of an expert are entrusted to the trial court's discretion. *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263 (Tenn.1997). Accordingly, appellate courts reviewing a trial court's decision regarding the qualifications or competency of a patient's medical expert employ the "abuse of discretion" standard. *Robinson v. LeCorps*, 83 S.W.3d 718, 725 (Tenn.2002); *Seffernick v. Saint Thomas Hosp.*, 969 S.W.2d 391, 393 (Tenn.1998); *Roberts v. Bicknell*, 73 S.W.3d 106, 113 (Tenn.Ct.App.2001); *Howell v. Baptist Hosp.*, No. M2001-02388-COA-R3-CV, 2003 WL 112762, at *4 n. 5 (Tenn.Ct.App. Jan. 14, 2003).

*Kenyon v. Handal*, 122 S.W.3d at 759.

Mr. Coleman makes no showing on appeal that the trial court abused its discretion. As a result the order denying Mr. Coleman's Rule 59.02 Motion is affirmed.

In an action for serious or severe emotional injury, plaintiff must provide expert testimony.

> Furthermore, we agree that in order to guard against trivial or fraudulent actions, the law ought to provide a recovery only for "serious" or "severe" emotional injury. *Burgess v. Superior Court (Gupta)*, 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 618, 831 P.2d 1197, 1200 (1992); *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649, 653 (Tex.1987). A "serious" or "severe" emotional injury occurs "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Rodrigues v. State*, 52 Haw. 156, 283, 472 P.2d 509, 520 (1970); *Paugh v. Hanks*, 6 Ohio St.3d 72, 77-78, 451 N.E.2d 759, 765 (1983); *Plaisance v. Texaco, Inc.*, 937 F.2d 1004, 1010 (5th Cir. 1991); *Prosser and Keeton on the Law of Torts*, § 54, at 364-65, n. 60. Finally, we conclude that the claimed injury or impairment must be supported by expert medical or scientific proof. *See Leong v. Takasaki*, 55 Haw. 398, 520 P.2d 758, 766-67 (1974).

*Camper,* 915 S.W.2d at 446.

Upon our *de novo* review, consistent with the rule as set forth in *Seavers*, 9 S.W.3d at 90, *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993) and *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997), we hold that the plaintiff has failed to carry his burden in establishing a *prima facie* case of negligent infliction of emotional distress. Accordingly, the judgment of the trial court is affirmed in all respects.

Costs of appeal are assessed against Appellant, Danny Coleman.

 

 

_____
WILLIAM B. CAIN, JUDGE