IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 22, 2013 Session

**CAREY B. BOALS, JR., AND KIM HICKERSON,**
**INDIVIDUALLY AND AS NEXT OF KIN OF JUDY MARLENE BOALS, DECEASED**
**v.**
**STEPHEN MURPHY D/B/A MEDINA FUNERAL HOME AND CREMATION**
**SERVICE; MURPHY UNDERTAKING, INC.; MURPHY ENTERPRISES**
**UNLIMITED, INC.; STEPHEN MURPHY AND JEFF MURPHY D/B/A**
**MUSIC CITY CREMATORY SERVICE, LLC; ALPHA MORTUARY SERVICE,**
**LLC; JOHN HARRIS D/B/A CHAPEL HILL CREMATORY; AND**
**CREMATIONS, INC., D/B/A CHAPEL HILL CREMATORY**

**An Appeal from the Circuit Court for Gibson County**
**No. H 3804      Clayburn Peeples, Judge**

_____

**No. W2013-00310-COA-R3-CV - Filed October 30, 2013**

_____

This is a lawsuit alleging unauthorized cremation. The plaintiffs' mother, a Tennessee resident, died in Arkansas while visiting a friend. The plaintiffs hired a Tennessee funeral home to transport the decedent's body back to her hometown of Medina, Tennessee, for an informal family viewing. The plaintiffs instructed the Tennessee funeral home operator that, after the viewing, the decedent's body was to be taken to Nashville, Tennessee, to be cremated there. The Tennessee funeral home retained the defendant Arkansas funeral home to handle the matter. The Arkansas funeral home delivered the body to an Arkansas crematory. The plaintiffs' mother's body was cremated by the crematory in Arkansas, so the plaintiffs were deprived of the opportunity to view their mother's deceased body in Tennessee. The plaintiffs filed this lawsuit against several defendants, alleging various causes of action arising out of the unauthorized cremation of their mother's body in Arkansas. The defendant Arkansas funeral home filed a motion for summary judgment as to all counts of the complaint. The trial court granted summary judgment to the Arkansas funeral home on all counts and certified the order as final under Tenn. R. Civ. Proc. 54.02. The plaintiffs now appeal. We affirm in part, reverse in part, and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed in Part, Reversed in Part, and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Todd D. Siroky, Jackson, Tennessee, for the Plaintiff/Appellants Carey B. Boals, Jr., and Kim Hickerson, individually and as next of kin of Judy Marlene Boals, deceased

Lori D. Parish, Memphis, Tennessee, for the Defendant/Appellee Alpha Mortuary Service, LLC

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

On October 6, 2009, Judy Marlene Boals ("Ms. Boals"), 60 years old, traveled from her hometown in Medina, Tennessee, to Little Rock, Arkansas, to visit a friend who was a patient at a Little Rock hospital. Suddenly and unexpectedly, Ms. Boals died during the hospital visit under suspicious circumstances. Hospital personnel reported that they found a third person in the room with Ms. Boals' deceased body with the door closed; the person was rummaging through Ms. Boals' purse and personal belongings and refused to open the door for hospital personnel. The suspect was arrested and held on felony theft charges. Little Rock police opened a homicide investigation of Ms. Boals' death. As part of the investigation, Little Rock authorities sent Ms. Boals' body to the coroner for an autopsy.

Little Rock police contacted Ms. Boals' children, Plaintiff/Appellants Carey B. Boals, Jr., and Kim Hickerson ("Mr. Boals" and "Ms. Hickerson," collectively referred to as "Plaintiffs"), and told them that their mother had died. At the time, Mr. Boals lived in Alabama, and Ms. Hickerson lived in or near Ms. Boals' hometown, Medina, Tennessee.

Upon hearing the news of Ms. Boals' death, Mr. Boals began making arrangements for transportation of Ms. Boals' body from Little Rock, Arkansas, to Medina, Tennessee. To this end, he contacted Defendant Stephen Murphy, whom he knew. Mr. Murphy owns and operates Defendant Medina Funeral Home and Cremation Service ("Medina Funeral Home") in Medina. Mr. Boals asked Mr. Murphy to have Ms. Boals' body transported to Medina so that the family could have an informal viewing of the body there, and after the Medina viewing transport the body to Nashville, Tennessee. Mr. Boals told Mr. Murphy that the family wanted the body cremated in Nashville at the Music City Crematory Service ("Music

City Cremation"), owned by Mr. Murphy and his brother, Defendant Jeff Murphy. Mr. Murphy and Mr. Boals had a series of conversations about these arrangements.

Because Mr. Boals lived in Alabama, on October 6, 2009, his sister Ms. Hickerson went to see Mr. Murphy at the Medina Funeral Home to confirm the arrangements. Mr. Murphy told Ms. Hickerson that he would have Ms. Boals' body transported from Arkansas to Medina, Tennessee, and that the family would have an opportunity to view the body when it was brought to Medina. After the family viewing in Medina, Mr. Murphy told Ms. Hickerson, he would have Ms. Boals' body transported to Nashville for cremation at Music City Crematory. Mr. Murphy told Ms. Hickerson that, in light of his relationship with Mr. Boals, he would waive the charges for transportation of the body.

In reliance on Mr. Murphy's representations, Ms. Hickerson signed a release stating that Ms. Hickerson and Mr. Boals released Ms. Boals' body to "Medina Funeral Home and Alpha Mortuary Service." Mr. Boals' signature was also on the release.[1] Defendant/Appellee Alpha Mortuary Service, LLC ("Alpha"), is a funeral home located in Little Rock, Arkansas, owned by William Newsome; the record does not indicate whether there is a relationship between Medina Funeral Home and Alpha Mortuary Service. Ms. Hickerson also signed a document entitled "Statement of Funeral Goods and Services Selected," which was an invoice containing Medina Funeral Home's charges for the cremation of Ms. Boals' body. Neither of these forms directly authorized the cremation of Ms. Boals' body; Ms. Hickerson and Mr. Boals assert that neither of them signed any document authorizing the cremation of Ms. Boals' body.

Contrary to Mr. Murphy's assurances that he would personally see to it that Ms. Boals' body was brought back to the family's home in Medina, Mr. Murphy contacted Mr. Newsome at Alpha for assistance. Mr. Murphy faxed Mr. Newsome the release signed by the Plaintiffs. The Plaintiffs allege that Mr. Murphy also sent Alpha a cremation authorization form containing the forged signatures of Mr. Boals and Ms. Hickerson. When it was sent, the cremation authorization form Mr. Murphy sent to Mr. Newsome did not include Defendant Chapel Hill Crematory as an authorized crematory; at some point, Mr. Newsome inserted Chapel Hill Crematory's name next to Alpha's as authorized to cremate Ms. Boals' body.[2]

---

[1] It is unclear whether Ms. Hickerson signed Mr. Boals' name on his behalf, or whether Mr. Boals' signature was procured through fax transmission or otherwise. The parties do not dispute, however, that the release contained the signatures of both Ms. Hickerson and Mr. Boals, and that it was duly authorized by both of the Plaintiffs.

[2] Some evidence indicates that Mr. Newsome, Alpha's owner, inserted "Chapel Hill Crematory" on the document after this lawsuit was filed, making it appear as though Chapel Hill Crematory was the authorized

(continued...)

On October 7, 2009, the Arkansas State Crime Lab completed the autopsy on Ms. Boals' body. Based on the autopsy, the Chief Medical Examiner ruled preliminarily that the manner of Ms. Boals' death was undetermined, pending results of toxicology tests and the pending homicide investigation.

The day the autopsy was completed, Mr. Newsome presented the signed release to the Arkansas State Crime Lab, so the Crime Lab released Ms. Boals' body to him. Mr. Newsome then delivered the body to Chapel Hill Crematory in Jacksonville, Arkansas, for cremation. In doing so, Mr. Newsome presented to Chapel Hill Crematory the forged cremation authorization. Based on this forged cremation authorization, Chapel Hill Crematory cremated Ms. Boals' body the very next day, October 8, 2009, in Arkansas.

Because the body was prematurely cremated, Mr. Boals and Ms. Hickerson were never able to have the family viewing of their mother's body in Tennessee. Perhaps not surprisingly, the Plaintiffs were never asked to pay for the funeral home services per their original agreement with Mr. Murphy.

On February 2, 2010, the Plaintiffs, individually and on behalf of Ms. Boals, filed this lawsuit in the Circuit Court for Gibson County, alleging wrongful cremation of Ms. Boals' body. As defendants, the lawsuit named Mr. Murphy, Mr. Murphy's Medina funeral home businesses (Medina Funeral Home and Murphy Undertaking, Inc.), Mr. Jeff Murphy, the Murphys' Nashville funeral home businesses (Music City Crematory Service and Murphy Enterprises, Unlimited, Inc.), Alpha, and Chapel Hill Crematory. In the Plaintiffs' amended complaint, they sought relief based on several legal theories: Count 1 – negligence per se for violations of (a) Tennessee Code Annotated § 62-5-107/ use of an unlicensed crematory, (b) Rule 4(B) of the Arkansas State Board of Embalmers and Funeral Directors Rules and Regulations, and (c) Tennessee Code Annotated § 39-17-312/abuse of a corpse; Count 2 – intentional, reckless, and/or negligent mutilation of a human body; Count 3 – negligent infliction of emotional distress ("NIED"); Count 4 – intentional infliction of emotional distress; Count 5 – violation of the Tennessee Consumer Protection Act ("TCPA"), Tennessee Code Annotated § 47-18-104; Count 6 – common law negligent/reckless/intentional conduct[3]; Count 7 – breach of contract; Count 8 – negligent

---

[2](...continued)
crematory. Other evidence, however, indicates that the name was included on the document when Ms. Boals' body was delivered to Chapel Hill Crematory for cremation.

[3]The Plaintiffs' claim under Count 6 generally asserts violations of "Common Law," with a blanket allegation that the defendants generally "negligently, recklessly, and/or intentionally" failed to act reasonably under the circumstances. For purposes of this appeal, we view this as a claim for violation of the common law right

(continued...)

misrepresentation; and Count 9 – intentional misrepresentation and fraud. The Plaintiffs sought "$2,000,000 for the mental anguish, physical pain, and emotional distress" caused by the defendants' misconduct. The complaint also sought $1,000,000 in punitive damages "for the intentional violation and reckless disregard of the statutes alleged above, and the reckless and/or intentional acts and omissions set forth herein." Discovery ensued.

On November 16, 2011, Alpha filed its first motion for summary judgment, seeking summary judgment on all of the Plaintiffs' claims. In the motion, Alpha pointed out that, in making the arrangements for the disposition of Ms. Boals' remains, the Plaintiffs contracted and dealt exclusively with Mr. Murphy and had no direct or indirect communication with anyone at Alpha. Alpha claimed in the motion that the undisputed evidence showed that Mr. Murphy instructed Alpha to have Ms. Boals' body cremated in the state of Arkansas, and that, pursuant to those instructions, Alpha delivered Ms. Boals' body to Chapel Hill Crematory. Based on these facts, Alpha argued, the Plaintiffs cannot establish any of their claims against Alpha.

On March 5, 2012, the trial court entered an order granting in part and denying in part Alpha's motion for summary judgment. The trial court granted the motion as to negligence per se for violation of Section 39-17-312/abuse of a corpse (Count 1(c)), mutilation of a human body (Count 2), intentional infliction of emotional distress (Count 4), violation of the TCPA (Count 5), negligent misrepresentation (Count 8), and intentional misrepresentation and fraud (Count 9). The trial court reasoned:

> Defendant Alpha successfully established that Plaintiffs are unable to prove essential elements of those claims. With specific reference to the allegations of negligent and intentional misrepresentation, Plaintiffs are unable to prove that Defendant Alpha provided information meant to guide them in their decision making process and are further unable to prove that they relied upon representations of Defendant Alpha in making their decisions. Plaintiffs are also unable to prove the intent or actions of Defendant Alpha necessary to establish Plaintiffs' allegations of intentional infliction of emotional distress [(Count 4)], fraud [(Count 9)], and violations of the [TCPA (Count 5)]. In addition, there is no evidence to support and Plaintiffs are unable to prove that Defendant Alpha mutilated the body [(Count 2)] or abused the corpse [(Count 1(c))] of Judy Marlene Boals, deceased.

[3](...continued)
to have custody and/or dispose of a family member's remains as one sees fit. *See generally Seals v. H & F, Inc.*, 301 S.W.3d 237 (Tenn. 2010).

The trial court denied Alpha's motion for summary judgment as to the remaining claims, namely, negligence per se for violation of Section 62-5-107/use of an unlicensed crematory (Count 1(a)), negligence per se for violation of Arkansas Board of Embalmers Rule 4(B) (Count 1(b)), NIED (Count 3), common law negligent/reckless/intentional conduct (Count 6), and breach of contract (Count 7).

On May 11, 2012, the Murphy Defendants filed a motion for summary judgment or, in the alternative, for partial summary judgment. The Murphy Defendants' motion was based in part on the assertion that the Plaintiffs "do not possess expert medical and/or scientific proof regarding Plaintiffs' alleged mental anguish and emotional injury claims." On June 5, 2012, Alpha filed its second motion for summary judgment, addressing the claims that remained pending against Alpha. In its motion, Alpha adopted the arguments made by the Murphy Defendants and also asserted that the Plaintiffs are "unable to prove that they have sustained damages as a result of any action of Defendant."

On August 6, 2012, the trial court conducted a hearing on the pending motions for summary judgment. On November 26, 2012, the trial court entered an order granting summary judgment in favor of Alpha on all remaining claims against it.[4] The trial court reasoned:

> Specifically, the Court found that Plaintiffs were unable to prove essential elements of their claims of negligent infliction of emotional distress [(Count 3)], negligence per se for violations of Tenn. Code Ann. § 62-5-107 [(Count 1(a))] and Rule 4(B) of the AR Board of Embalmers and Funeral Directors Rules and Regulations [(Count 1(b))], and common law negligence [(Count 6)]. With regard to these claims, the Court determined that Plaintiffs' suit sought compensation for stand-alone claims of emotional injury and mental anguish, that such claims of severe emotional injury require expert medical proof to establish that such an injury was indeed suffered by Plaintiffs, that such proof is lacking in Plaintiffs' case as neither Plaintiff had received any medical treatment for their alleged severe emotional injury, and had not presented evidence from any medical experts, making them unable to establish that such damages were suffered. Further, that because Plaintiffs cannot present the proof required to demonstrate that they suffered damages as the result of Defendant's alleged conduct, they are unable to establish an essential element of their claims for the various types of negligence, making summary judgment appropriate as a matter of law.

---

[4]On March 14, 2013, the trial court entered an order dismissing the Plaintiffs' claims against John Harris d/b/a Chapel Hill Crematory and Cremations, Inc., d/b/a Chapel Hill Crematory, based on lack of personal jurisdiction. That order is not at issue in this appeal.

The trial court also granted summary judgment to Alpha on the Plaintiffs' breach of contract claim (Count 7), holding that the "Plaintiffs were unable to prove an essential element of their [breach of contract] claim . . . insomuch as they are unable to establish that it had a contract with this Defendant, making summary judgment appropriate as a matter of law." Thus, in this order, the trial court granted Alpha summary judgment on all of the claims for which summary judgment was denied in the first order — negligence per se for violation of Section 62-5-107/use of an unlicensed crematory (Count 1(a)), negligence per se for violation of Arkansas Board of Embalmers Rule 4(B) (Count 1(b)), NIED (Count 3), common law negligent/reckless/intentional conduct (Count 6), and breach of contract (Count 7).

At the time the trial court entered the order granting Alpha's second summary motion, the Plaintiffs' claims against the remaining defendants were still pending. Consequently, the trial court certified the order as final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Plaintiffs now appeal the two orders that, when combined, award summary judgment in favor of Alpha on all of the Plaintiffs' claims.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

The Plaintiffs raise several issues on appeal, all challenging different aspects of the trial court's orders granting summary judgment in favor of Alpha. The Plaintiffs state the issues as follows:

> (1) Whether the trial court erred in making inconsistent rulings on the Plaintiffs' claims against the Murphy Defendants and Alpha?
>
> (2) Whether the trial court committed reversible error in holding that the Plaintiffs are required to present expert proof of their damages (and in granting summary judgment on that basis)?
>
> (3) Whether the trial court erred in dismissing the Plaintiffs' claim for negligence per se for violation of Tennessee Code Annotated § 62-5-107/use of an unlicensed crematory (Count 1(a)) because Alpha's actions were grossly negligent?
>
> (4) Whether the trial court erred in dismissing the Plaintiffs' claim for violation of Arkansas State Board of Embalmers and Funeral Directors Rule and Regulations 4(B) (Count 1(b))?

(5) Whether the trial court erred in dismissing the Plaintiffs' claims against Alpha for negligence per se for violation of Tennessee Code Annotated § 37-17-312(a)(1)/abuse of a corpse (Count 1(c))?

(6) Whether the trial court erred in granting summary judgment on the Plaintiffs' claim for mutilation of Ms. Boals' body (Count 2)?

(7) Whether the trial court erred in granting summary judgment on the Plaintiffs' claims for negligent misrepresentation (Count 8)?

(8) Whether the trial court erred in granting summary judgment on the Plaintiffs' claims for intentional misrepresentation and fraud (Count 9)?

(9) Whether the trial court erred in granting summary judgment on the Plaintiffs' claim for punitive damages?

Summary judgment is appropriate only if no genuine issues of material fact exist for trial, and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; **Blair v. West Town Mall**, 130 S.W.3d 761, 763 (Tenn. 2004). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." **Martin v. Norfolk S. Ry. Co.**, 271 S.W.3d 76, 83 (Tenn. 2008) (citing **Hannan v. Alltel Publ'g Co.**, 270 S.W.3d 1, 5 (Tenn. 2008)).[5] In order to negate an essential element of the claim, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." **Id.** at 84 (citing **Blair**, 130 S.W.3d at 768). "It is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." **Hannan**, 270 S.W.3d at 7-8. Instead, the moving party must show that the nonmoving party *cannot* establish an essential element of the claim at trial. **Id.** The fact that a plaintiff has not discovered any evidence to prove an element of his claim does not mean that he will not discover such evidence prior

---

[5]Tennessee's General Assembly has enacted Tennessee Code Annotated § 20-16-101, intended to "return the summary judgment burden-shifting analytical framework to that which existed prior to **Hannan**, reinstating the 'put up or shut up' standard." **Coleman v. S. Tenn. Oil Inc.**, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at *5 n.3 (Tenn. Ct. App. July 5, 2012). The new standard applies to all cases filed on or after July 1, 2011. **See** 2011 Pub. Acts, ch. 498, § 2, eff. July 1, 2011. Because this case was filed prior to the effective date of Tennessee Code Annotated Section 20-16-101, we apply the summary judgment standard in **Hannan**.

to trial.  *See, e.g., White v. Target Corp.*, No. W2010-02372-COA-R3-CV, 2012 WL 6599814, at *7 (Tenn. Ct. App. Dec. 18, 2012) (explaining that, under *Hannan*, it is not enough to say that the nonmovant has not yet proffered evidence to substantiate her assertions); *see also Ellington v. Jackson Bowling & Family Fun Center, L.L.C.*, No. W2012-00272-COA-R3-CV, 2013 WL 614502, at *8 (Tenn. Ct. App. Feb. 19, 2013). Therefore, at the summary judgment stage, the plaintiff's failure to produce sufficient evidence to prove a certain element of his claim is not a valid basis for granting summary judgment in favor of the defendant.  "If the moving party [defendant] is unable to make the required showing, then its motion for summary judgment will fail." *Martin*, 271 S.W.3d at 83 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

If the moving party makes a properly supported motion, "[t]he non-moving party must then establish the existence of the essential elements of the claim." *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).  The nonmovant is required to produce evidence of specific facts that establish a genuine issue of material fact. *Martin*, 271 S.W.3d at 84 (citing *McCarley*, 960 S.W.2d at 588; Byrd, 847 S.W.2d at 215).  "The nonmoving party may satisfy its burden of production by: (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Id.* (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.6).  "The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." *Id.* (citing *McCarley*, 960 S.W.2d at 588).

The issue of whether the trial court erred in granting or denying a motion for summary judgment is a question of law, which we review *de novo*.  "Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

## ANALYSIS

In our analysis, we vary somewhat from the order in which the Plaintiffs set forth the issues raised, and we group some claims together for purpose of discussion.

**Summary Judgment Based on Lack of Expert Proof of Damages**

The Plaintiffs contend that the trial court erred in granting Alpha's motion for summary judgment as to the "various types of negligence" claims based on the Plaintiffs' lack of expert proof of serious or severe emotional injuries. The trial court held that the Plaintiffs' claims for negligence per se for violation of Section 62-5-107/use of an unlicensed crematory (Count 1(a)), negligence per se for violation of Arkansas Board of Embalmers Rule 4(B) (Count 1(b)), NIED (Count 3), and common law negligence (Count 6) are "stand-alone claims of emotional injury and mental anguish." It held that "such claims of severe emotional injury require expert medical proof to establish that such an injury was indeed suffered by Plaintiffs." Because the Plaintiffs had offered no expert proof on their injuries as of the date of the summary judgment hearing, and because the Plaintiffs had not sought medical treatment for their emotional injuries, the trial court granted summary judgment in favor of Alpha on those claims. With no expert proof, the trial court reasoned, the Plaintiffs are "unable to establish that such [severe emotional] damages were suffered."

On appeal, the Plaintiffs argue that they are not required to proffer expert proof of their emotional injuries in this case, because they alleged outrageous conduct along with other multiple types of claims and damages. They argue that the trial court erred in looking at the type of injury alleged rather than the kind of conduct involved to determine whether their claims are "stand alone" claims for emotional injuries. In this case, the Plaintiffs contend, the claims alleged are not "stand alone" NIED claims, so no expert proof is required. *See Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133, 136 (Tenn. 2001); *Miller v. Willbanks*, 8 S.W.3d 607, 614-15 (Tenn. 1999).

Appellee Alpha argues that the trial court did not err in holding that, because the negligence claims that were dismissed sought only emotional distress damages, they were all "stand alone" claims, also citing *Estate of Amos*. Because the Plaintiffs allege only damages related to their emotional well-being, Alpha contends, their claims are "stand alone" claims for NIED and expert proof of damages is required.

A review of the applicable legal principles is helpful to our analysis. The seminal Tennessee case on whether a plaintiff who asserts a claim for NIED must submit expert proof of damages is *Camper v. Minor*, 915 S.W.2d 437, 443-44 (Tenn. 1996). In that case, the plaintiff's truck collided with another vehicle driven by a 16-year-old. The 16-year-old driver was killed instantly in the collision. The driver of the truck sued the deceased teenage driver's estate and the owner of the vehicle the teenager was driving. He asserted only a claim of NIED, seeking to recover for the emotional injuries he sustained by seeing the decedent's body immediately after the accident. *Id.* at 439. The question presented in *Camper* was one that had been the subject of some dispute in Tennessee courts, namely,

whether a plaintiff who asserts only a claim of NIED must prove that he suffered a contemporaneous physical injury in order to recover for his emotional injuries.

Settling this issue, the *Camper* Court held that a plaintiff who asserts a claim for NIED is not required to prove an accompanying physical injury. *Id.* at 440, 444 (noting that "law of negligent infliction of emotional distress is one of the most disparate and confusing areas of tort law," and that "cases applying Tennessee law on the subject had been far from consistent"). It concluded that a claim for NIED should be analyzed under a "general negligence approach." However, the *Camper* Court imposed safeguards intended to prevent recovery in frivolous lawsuits but still protect the rights of plaintiffs who had truly suffered serious emotional injuries. *Id.* at 440 (noting that the law of NIED "is fundamentally concerned with striking a balance between two opposing objectives: first, promoting the underlying purpose of negligence law-that of compensating persons who have sustained emotional injuries attributable to the wrongful conduct of others; and second, avoiding the trivial or fraudulent claims that have been thought to be inevitable due to the subjective nature of these injuries"). First, the Court held that one who asserts a claim for NIED may recover only if he proves that he sustained "serious" or "severe" emotional injury caused by the defendant's negligent conduct. *Id.* at 446. The Court defined a "serious" or "severe" injury as one "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." *Id.* As an added safeguard against frivolous claims, the Court held that "the claimed injury or impairment must be supported by expert medical or scientific proof." *Id.* Thus, *Camper* established that a plaintiff who brings a NIED claim must (1) satisfy the five elements of ordinary negligence (duty, breach of duty, injury or loss, causation in fact, and proximate or legal cause), (2) establish a "serious" or "severe" emotional injury, and (3) support his or her claim of serious or severe injury with expert medical or scientific proof. *See Marla H. v. Knox County*, 361 S.W.3d 518, 529 (Tenn. Ct. App. 2011) (citing *Camper*, 915 S.W.2d at 446).

The standard of proof was refined a few years later in *Miller v. Willbanks*. In *Miller*, the Tennessee Supreme Court held that the "expert proof" requirement in *Camper* does not apply in cases in which a plaintiff alleges *intentional*, as opposed to *negligent*, infliction of emotional distress. *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999). The *Miller* Court noted that the level of proof required to prove intent provides an added measure of reliability to the claim. For this reason, it is not necessary to have the safeguard of requiring expert proof of the emotional injury resulting from intentional infliction of emotional distress:

> With regard to intentional infliction of emotional distress, the added measure of reliability, *i.e.*, the insurance against frivolous claims, is found in the plaintiff's burden to prove that the offending conduct was outrageous. This

is an exacting standard requiring the plaintiff to show that the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts § 46 cmt. d (1965). Such conduct is "important evidence that the distress has existed," *id.* § 45 cmt. j, and from such conduct, more reliable indicia of a severe mental injury may arise. The outrageous nature of the conduct, therefore, vitiates the need for expert testimony in a claim for intentional infliction of emotional distress. The risk of frivolous litigation, then, is alleviated in claims for intentional infliction of emotional distress by the requirement that a plaintiff prove that the offending conduct was so outrageous that it is not tolerated by a civilized society.

*Id.* The *Miller* Court , however, reaffirmed the "expert proof" requirement in claims for NIED:

In cases of negligent infliction of emotional distress, however, the conduct giving rise to the tort is not marked by extraordinary or outrageous elements inherent in intentional conduct. Thus, concerns with unwarranted claims are not addressed by the kind of conduct that must be proved to obtain damages for emotional distress. In the absence of any reliable indicia of a severe mental injury suggested by the conduct, some safeguard must be imposed to limit frivolous litigation. Accordingly, when the conduct complained of is negligent rather than intentional, the plaintiff must prove the serious mental injury by expert medical or scientific proof. *See Camper*, 915 S.W.2d at 446.

*Miller*, 8 S.W.3d at 614-15. Thus, the *Miller* Court explained, the "safeguards [in a given case] differ based on the *kind of conduct*, rather than the kind of injury, for which a plaintiff seeks a remedy." *Id.* at 614 (emphasis in original).

It may be simple to state the general rule requiring expert proof in NIED cases, but applying it is not so simple, particularly in cases in which the plaintiff asserts a claim for NIED along with other claims involving different torts and different types of damages. This scenario was examined in *Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133 (Tenn. 2001).

In *Estate of Amos*, the plaintiff contracted HIV during a blood transfusion in 1984. Unaware of her infection, the plaintiff married and gave birth to a daughter several years later. Tragically, the plaintiff's infant daughter died within weeks of her birth due to an AIDS-related illness. The plaintiff was then tested and discovered that she had contracted the HIV virus from her earlier blood transfusion. The plaintiff and her husband sued the hospital that

gave the plaintiff the blood transfusion. The complaint alleged wrongful birth, negligent failure to warn,[6] and NIED — all claims based on negligent, not intentional, conduct. *Estate of Amos*, 62 S.W.3d at 135. While the lawsuit was pending, the plaintiff died of AIDS, and the lawsuit proceeded in the name of her estate. *Id.* at 135 n.2. The case was tried before a jury, and the jury awarded the plaintiff's estate a total of $2,722,500 in damages.[7] *Id.* at 136. The hospital appealed.

On appeal, the intermediate appellate court in *Estate of Amos* modified the jury's award of damages. It held that the plaintiff was required to submit expert or scientific testimony of severe or serious emotional injury to support an award of damages for NIED. The intermediate appellate court reduced the jury verdict by the amount attributable to emotional injury and held that the estate was entitled to $32,884.07, "the amount of the medical and funeral expenses." *Id.* The plaintiff's estate appealed to the Tennessee Supreme Court.

On appeal to the Supreme Court, the hospital argued "that *Camper's* requirements of expert medical or scientific proof and serious or severe injury extend to all negligence claims resulting in emotional injury." *Id.* The Supreme Court in *Estate of Amos* disagreed. It held that the *Camper* safeguards apply only to "stand alone" claims for NIED and do not apply to cases in which the plaintiff's emotional injury is "parasitic" to other types of claims or injuries. The *Estate of Amos* Court explained:

> The special proof requirements in *Camper* are a unique safeguard to ensure the reliability of "stand-alone" negligent infliction of emotional distress claims. *Camper*, 915 S.W.2d at 440; *see also Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999). The subjective nature of "stand-alone" emotional injuries creates a risk for fraudulent claims. *Miller*, 8 S.W.3d at 614 ("legitimate concerns of fraudulent and trivial claims are implicated when a plaintiff brings an action for a purely mental injury"); *see Camper*, 915 S.W.2d at 440. The risk of a fraudulent claim is less, however, in a case in which a claim for emotional injury damages is one of multiple claims for damages. When emotional damages are a "parasitic" consequence of negligent conduct that results in multiple types of damages, there is no need to impose special pleading or proof requirements that apply to "stand-alone" emotional distress

---

[6]The plaintiffs in *Estate of Amos* initially included a claim for medical malpractice, but the intermediate appellate court held that the "failure to warn" claim was not governed by the medical malpractice statute. *See Estate of Amos*, 62 S.W.3d at 135-36.

[7]The jury also awarded the plaintiff's husband $1,639,200 in damages, but the intermediate appellate court reversed the verdict in favor of the husband, holding that the hospital owed no duty to him. *Estate of Amos*, 62 S.W.3d at 136.

claims. *See Kush v. Lloyd*, 616 So.2d 415, 422-23 (Fla. 1992); *see also Naccash v. Burger*, 223 Va. 406, 290 S.E.2d 825, 831 (1982); *Phillips v. United States*, 575 F. Supp. 1309, 1318-19 (D.S.C. 1983).

Even before *Camper*, a plaintiff could recover for emotional injuries as one of several items of compensatory damages. *See, e.g., Smith v. Gore*, 728 S.W.2d 738, 751-52 (Tenn. 1987) (in an action for wrongful pregnancy, plaintiffs could recover damages for medical expenses, pain and suffering, loss of wages, and emotional distress or mental anguish); *Laxton v. Orkin Exterminating Co., Inc.*, 639 S.W.2d 431, 431, 434 (Tenn. 1982) (damages allowed for mental anguish, personal injury, and property damages resulting from the negligent contamination of plaintiffs' water supply); *Roberson v. Univ. of Tenn.*, 829 S.W.2d 149, 152 (Tenn. Ct. App. 1992) (damages for gender discrimination included actual damages, damages for emotional distress, attorneys' fees, costs, and punitive damages). Before *Camper*, however, Tennessee courts did not allow recovery for mental injuries "without accompanying physical injury or physical consequences, or without other independent basis for tort liability." *Laxton*, 639 S.W.2d at 433. The *Camper* holding contemplated a plaintiff who was involved in an incident and received only emotional injuries. With its abandonment of the "physical manifestation" rule, the *Camper* Court opened the door for legitimate "stand-alone" claims of negligent infliction of emotional distress. *See* Laura J. Bradley, Case Note, *Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997), 65 Tenn. L. Rev. 293, 305. The Camper holding did not alter the longstanding rule that emotional injuries are compensable if accompanied by additional claims for damages. *Imposing the more stringent Camper proof requirements upon all negligence claims resulting in emotional injury would severely limit the number of otherwise compensable claims.* Such a result would be contrary to the intent of our opinion in *Camper* – to provide a more adequate, flexible rule allowing compensation for valid "stand-alone" emotional injury claims. *Camper*, 915 S.W.2d at 446.

*Estate of Amos*, 62 S.W.3d at 136-37. Thus, the *Estate of Amos* Court declined to apply the "expert proof" requirement to all negligence claims involving emotional injury because doing so "would severely limit the number of otherwise compensable claims" and "would be contrary to the intent of [the] opinion in *Camper*." For this reason, it held that expert proof would be required only for "stand alone" NIED claims. *Id.*

More recently, in *Rogers v. Louisville Land Co.*, 367 S.W.3d 196 (Tenn. 2012), the Supreme Court reaffirmed that the "expert proof" requirement applies only to a "stand alone" claim

for NIED. It distinguished between a "stand alone" NIED claim and one in which the plaintiff's emotional injuries are "a 'parasitic' consequence of negligent conduct that results in multiple types of damages." *Rogers*, 367 S.W.3d at 206 n.10. The *Rogers* Court explained:

> When the claim for negligent infliction of emotional distress is a "stand-alone" claim, *i.e.*, one for emotional disturbance alone in the absence of a physical injury, the serious or severe mental injury must be proven "through expert medical or scientific proof." *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 528 (Tenn. 2008). When the cause of action for negligent infliction is for "emotional damages [that] are a 'parasitic' consequence of negligent conduct that results in multiple types of damages," there is no requirement that the serious or severe mental injury be proven by expert proof. *Estate of Amos v. Vanderbilt Univ.*, 62 S.W.3d 133, 137 (Tenn. 2001).

*Rogers*, 367 S.W.3d at 206 n.10.

In this appeal, the Plaintiffs concede that expert proof is required for a "stand alone" claim for NIED. They contend, however, that the negligence claims summarily dismissed by the trial court for lack of expert proof are not "stand alone" claims for NIED. They note that their claim for NIED in Count 3 was accompanied by allegations of several other negligent and intentional torts, including negligence per se (3 varieties), mutilation of a body, breach of contract, and violation of the TCPA, as well as claims for other types of damages, including pain and suffering, attorney fees, treble damages, and punitive damages. Thus, the Plaintiffs argue, *Estate of Amos* teaches that, because the NIED claim was "accompanied by additional claims for damages," neither that claim nor the other "various negligence claims" that were dismissed are "stand alone" claims for NIED. Consequently, expert proof of emotional damages is not required. *See Estate of Amos*, 62 S.W.3d at 137.

In response, Alpha argues that, because the negligence claims that were dismissed by the trial court seek only emotional distress damages, they are all "stand alone" claims within the meaning of that term as described in *Estate of Amos*. It notes that the only damages the Plaintiffs claim arise from the fact that they were prevented from viewing their mother's deceased body and saying their goodbyes to her; the Plaintiffs allege no physical injuries. These alleged damages affect only the Plaintiffs' emotional well-being and do not implicate any other type of damages, including physical injuries. Therefore, Alpha contends, regardless of how the Plaintiffs' claims may have been captioned, they are "stand alone" claims for NIED and expert proof of damages is required.

Thus, the issue before us is narrowed to whether the negligence claims dismissed by the trial court — negligence per se for violation of Section 62-5-107/ use of an unlicensed crematory

(Count 1(a)), negligence per se for violation of Arkansas Board of Embalmers Rule 4(B) (Count 1(b)), NIED (Count 3), and common law negligent/reckless/intentional conduct (Count 6) — are "stand alone" NIED claims, that is, "claim[s] that seek[] recovery only for emotional injuries and that [are] not accompanied by 'additional claims for damages.'" *Eskin v. Bartee*, 262 S.W.3d 727, 735 (Tenn. 2008) (quoting *Estate of Amos*, 62 S.W.3d at 137).

The question of whether a particular claim fits the definition of a "stand alone" claim has been addressed on only a few occasions. In *Flax v. DailmerChrysler*, an eight-month-old child and his parents were riding in an automobile when their car was struck by another vehicle. The parents survived the accident, but their infant child died. *Flax v. DaimlerChrysler Corp.*, 272 S.W.3d 521, 528 (Tenn. 2008). The parents filed a wrongful death lawsuit against the defendant auto manufacturer and the negligent driver; the lawsuit also included a NIED claim as to the plaintiff mother. After a lengthy trial, the jury returned a verdict in favor of the plaintiffs; the jury awarded $5,000,000 in compensatory damages for the wrongful death of the child and $2,500,000 to the mother individually for NIED.[8] *Id.* at 527. After phase two of the trial, the jury awarded the plaintiffs $65,500,000 in punitive damages for the wrongful death of the child and $32,500,000 in punitive damages to the mother on her NIED claim, finding that the manufacturer's conduct was reckless. *Id.* The intermediate appellate court affirmed the compensatory damages of $5,000,000 for wrongful death but reversed the wrongful death punitive damages award, holding that the manufacturer's conduct was not reckless. The intermediate appellate court also reversed the awards of compensatory and punitive damages that were based on the mother's claim of NIED because she did not submit expert proof of her emotional injuries under *Camper*. *Id.*

On appeal to the Supreme Court in *Flax*, the mother argued that the intermediate appellate court erred in holding that her claim for NIED claim was a "stand alone" claim, because she had also asserted a claim for wrongful death. *Id.* at 529. The Supreme Court disagreed. It held that the wrongful death claim actually belonged to the estate of the deceased child, not to the mother, so the mother's only claim was that of NIED. *Id.* It held, "This case is therefore distinguishable from *Amos*, a case in which the plaintiff sought to recover for emotional damages parasitic to negligence and wrongful birth claims that were personal to the plaintiff." *Id.* at 529-30.

The mother in *Flax* also argued that her NIED claim was not a "stand alone" claim because she suffered minor physical injuries in the accident, even though she chose not to include a claim for those injuries in the lawsuit. *Id.* at 530. Again the Supreme Court disagreed. It

---

[8]The jury found that the seats in the vehicle manufactured by the defendant were defective and unreasonably dangerous. *Flax*, 272 S.W.3d at 526.

held that the emotional injuries allegedly suffered by the mother were not "parasitic" to her minor physical injuries, "but rather are the result of witnessing the death of her child." *Id.* Thus, the *Flax* Court held, the emotional injuries suffered in the accident "are completely unrelated to any physical injuries she may have sustained." The Court explained further:

> When a plaintiff suffers a physical injury there is some indication that allegations of emotional and mental injuries resulting from that injury are not fraudulent. *See Amos*, 62 S.W.3d at 137. On the other hand, having a potential claim for physical injuries does nothing to ensure the reliability of [a NIED] claim relating to the emotional injuries resulting from witnessing the death or injury of a third party. Accordingly, there is no good reason to relieve [the mother] of her burden of meeting the *Camper* requirements.

*Id.*

Finally in *Flax*, the mother argued that the severity of her emotional injuries was obvious from the tragic circumstances of her case, and so expert proof of those damages should not be required. The Court rejected this argument as well. It acknowledged that some cases are sympathetic and "may tempt [the Court] to hold that certain circumstances 'obviously' result in severe emotional injuries," but cautioned that it "must also recognize that such a holding would subvert the principles set forth in *Camper* and would likely lead to the kind of ad hoc decisions that originally made [NIED] case law unpredictable and incoherent." *Id.* at 530-31.

The parties to the instant appeal cited no cases from this Court addressing whether an NIED claim, brought amidst other actions for negligence, is considered a "stand alone" claim for NIED when the plaintiff alleges only emotional injury. Our research has uncovered one such case, *Riley v. Whysbrew*, 185 S.W.3d 393 (Tenn. Ct. App. 2005). In *Riley*, the plaintiffs lived next door to tenants who rented a house from the defendant owner. The tenants engaged in disturbing conduct such as illegal drug use, the discharge of firearms, and harassment of the plaintiffs. The plaintiffs sued the defendant homeowner for nuisance, intentional infliction of emotional distress, and NIED, alleging that he permitted the tenants' behavior to continue even after the plaintiffs pleaded with him to either evict the tenants or to make them stop the offending behavior. The trial court granted summary judgment to the homeowner on all of the plaintiffs' claims, and the plaintiffs appealed.

On appeal in *Riley*, the homeowner maintained that the trial court properly granted summary judgment on the plaintiffs' NIED claim because expert proof is required to support an award of damages for such a claim, and the plaintiffs had admitted that they never obtained medical treatment for their claimed emotional distress. In response, the plaintiffs argued that expert proof of damages was not required because their NIED claim was not a "stand alone" claim.

The appellate court agreed with the plaintiffs. Because the plaintiffs' NIED claim was related to their claim that the homeowner negligently failed to abate the nuisance caused by the tenants, the appellate court held that the plaintiffs' NIED claim was "not a stand alone claim and the *Camper* requirement of expert medical or scientific proof is not applicable." *Id.* at 401 (citing the pre-*Camper* case of *Laxton v. Orkin Exterminating Co.*, 639 S.W.2d 431, 433 (Tenn. 1982), for the proposition that even pre-*Camper*, a plaintiff could not recover for mental injury "without accompanying physical injury or physical consequences, or without other independent basis for tort liability").

In addition, we have reviewed the cases cited by the Supreme Court in *Estate of Amos* in its discussion of whether the plaintiff's claim for NIED was a "stand alone" claim, particularly in light of the fact that "multiple claims for damages" were also asserted in that lawsuit, including wrongful death and medical negligence. *Estate of Amos*, 62 S.W.3d at 136. The *Estate of Amos* Court listed examples of other cases in which emotional injuries were alleged as one of several bases for compensatory damages, including *Smith v. Gore*, 728 S.W.2d 738, 751-52 (Tenn. 1987) (holding that, in an action for wrongful pregnancy, plaintiffs could recover damages for medical expenses, pain and suffering, loss of wages, and emotional distress or mental anguish); *Laxton*, 639 S.W.2d at 434 (holding that damages were allowed for mental anguish, personal injury, and property damages resulting from the negligent contamination of plaintiffs' water supply); and *Roberson v. Univ. of Tenn.*, 829 S.W.2d 149, 152 (Tenn. Ct. App. 1992) (noting that damages for gender discrimination included actual damages, damages for emotional distress, attorneys' fees, costs, and punitive damages). The *Estate of Amos* Court also reaffirmed that requiring expert proof of emotional damages in "all negligence claims resulting in emotional injury would severely limit the number of otherwise compensable claims." *Estate of Amos*, 62 S.W.3d at 137.

After considering this caselaw and carefully reviewing the appellate record in this case, we must conclude that the trial court below mischaracterized the Plaintiffs' negligence claims as "stand alone" NIED claims. While the damages sought for these claims are based on non-physical injuries, this does not necessarily mean that the claims are "stand alone" NIED claims.

Initially, we note that, on their face, the Plaintiffs' claims for negligence per se and the claim for violation of the common law are not captioned as "NIED" claims. That fact in and of itself, of course, is not enough. We recognize that a plaintiff need not use the exact words "negligent infliction of emotional distress" for a claim to be considered a NIED claim. *See Jones v. Marlow Family Ltd. P'ship*, No. E2006-02677-COA-R3-CV, 2007 WL 2142978, at *6 (Tenn. Ct. App. July 27, 2007) (NIED claim is "essentially a claim of negligence which results in emotional distress"). Be we also note that these claims are not generalized allegations of negligence. Rather, the claims state an "independent basis for tort liability"

based on alleged violations of a statute and/or an industry regulation, and also the common law right to have custody and/or dispose of a family member's remains as one sees fit. *See* **Estate of Amos,** 62 S.W.3d at 137 (citing **Laxton**, 639 S.W.2d at 433). The fact that the Plaintiffs seek damages for emotional injuries for these claims does not convert them into NIED claims.

The claim asserted by the Plaintiffs in Count 3, however, is clearly a NIED claim. Whether the Count 3 NIED claim is a "stand alone" claim is a different issue. In light of our review of the caselaw outlined above, we agree with the Plaintiffs that this is not a "stand alone" claim for NIED.[9] In making this determination, we look to "the *kind of conduct*, rather than the kind of injury, for which a plaintiff seeks a remedy." **Miller**, 8 S.W.3d at 614 (emphasis in original). As we have indicated, the Plaintiffs have alleged a variety of negligence claims for which several types of damages are recoverable other than emotional injuries. Specifically, the Plaintiffs' claims for negligence per se, negligent mutilation, violation of the common law, breach of contract, and violation of the TCPA are independent bases for tort liability that are related to the injuries that the Plaintiffs' NIED claim seeks to redress. **See Riley**, 185 S.W.3d at 401 (NIED damages are related to the damages recoverable in the nuisance claim). In other words, the Plaintiffs' emotional injuries are "a 'parasitic' consequence of negligent conduct that results in multiple types of damages." **Estate of Amos**, 62 S.W.3d at 136. Therefore, based on the record before us, the Plaintiffs' NIED claim is not a "stand alone" claim, and expert proof is not required to support the damages sought.[10]

Thus, we conclude that, at this juncture, the Plaintiffs have not alleged a "stand alone" NIED claim. Consequently, we must conclude that the trial court erred in holding that the Plaintiffs are required to submit expert proof to support their request for damages for emotional injuries, and in granting summary judgment to Alpha on that basis.[11]

---

[9]Alpha is not precluded from raising this issue to the trial court again if, at some point, all of the Plaintiffs' claims other than Count 3 are disposed of prior to trial, either by summary judgment or otherwise.

[10]Although we have held that the claims that were dismissed by the trial court cannot be characterized as "stand alone" NIED claims, we do not agree with the Plaintiffs' argument that a NIED claim is not "stand alone" simply because intentional torts are included in their complaint. The stringent proof requirements set out in **Camper** would be meaningless if a plaintiff could avoid them simply by including a claim alleging intentional conduct alongside the claim for NIED. Therefore, our conclusion that the Plaintiffs' NIED claim is not a "stand alone" claim is based on the fact that the Plaintiffs included in their complaint allegations of independent negligent tort liability for which emotional distress damages are recoverable.

[11]The Plaintiffs will, of course, be required to show that their emotional injuries were "serious" or "severe," regardless of whether the emotional injuries were inflicted intentionally or negligently. "[B]oth actions for
(continued...)

Moreover, regardless of whether the Plaintiffs will be required to submit expert proof on their claims at trial, the ***Hannan*** standard precludes a grant of summary judgment on the Plaintiffs' "various negligence claims" on the basis that the Plaintiffs failed — at the summary judgment stage — to present such proof. In the case at bar, the trial court granted summary judgment in favor of Alpha because the Plaintiffs had *not yet* submitted expert proof of their serious or severe emotional injury. Under ***Hannan***, a party who moves for summary judgment cannot "negate" an element of the nonmoving party's claim simply by noting that the nonmoving party has no evidence to prove the element. Under that circumstance, the moving party has not "disprove[d] an essential factual claim" made by the plaintiff, and therefore has not shifted the burden to the plaintiff. ***White***, 2012 WL 6599814, at *7 (quoting ***Martin***, 271 S.W.3d at 84). In general, as we interpret the holding in ***Hannan***, it will not suffice to simply point out that the nonmoving party has no evidence to support his claim:

> Under ***Hannan***, as we perceive the ruling in that case, it is not enough to rely on the nonmoving party's lack of proof even where, as here, the trial court entered a scheduling order and ruled on the summary judgment motion after the deadline for discovery had passed. Under ***Hannan***, we are required to assume that the nonmoving party may still, by the time of trial, somehow come up with evidence to support her claim.

***Id***. at *7 n.3. Thus, a grant of summary judgment is not appropriate on the basis that the plaintiff *has not yet* submitted sufficient evidence to support each element of his claim.

Therefore, because the trial court below based its decision on the Plaintiffs' failure to submit expert proof of damages, we must conclude that the grant of summary judgment on this basis was inappropriate. Accordingly, we reverse the trial court's grant of summary judgment to Alpha as to negligence per se for violation of Section 62-5-107/use of an unlicensed crematory (Count 1(a)),[12] negligence per se for violation of Arkansas Board of Embalmers

---

[11](...continued)
intentional infliction of emotional distress and negligent infliction of emotional distress (including all three "subspecies" of negligent infliction: "stand-alone," "parasitic," and "bystander") require an identical element: a showing that the plaintiff suffered a serious mental injury resulting from the defendant's conduct." ***Rogers***, 367 S.W.3d at 206. Alpha argues that, even apart from the lack of expert proof, the evidence in the record is insufficient to establish that the Plaintiffs suffered serious or severe emotional distress. As detailed herein, at the summary judgment stage under the ***Hannan*** standard, this argument is without merit.

[12]The Plaintiffs argue on appeal that the trial court erred in dismissing their claim for negligence per se for violation of Section 62-5-107/use of an unlicenced crematory, because Alpha's actions were grossly
(continued...)

Rule 4(B) (Count 1(b)),[13] NIED (Count 3), and common law negligence (Count 6), to the extent that its decision was based on lack of expert proof.

**Negligence Per Se for Violation of T.C.A. § 39-17-312(a)(1) (Count 1(c))**

The Plaintiffs challenge the trial court's grant of summary judgment in favor of Alpha on their claim that Alpha was negligent per se for violating Section 39-17-312(a)(1)/abuse of a corpse (Count 1(c)). In its grant of summary judgment on this claim in its March 2012 order, the trial court stated only that "there is no evidence to support and Plaintiffs are unable to prove that Defendant Alpha . . . abused the corpse [(Count 1(c))] of" the decedent. The Plaintiffs argue that this was error, because the evidence in the record and all inferences therefrom must be viewed in a light most favorable to them. They contend that, based on the undisputed facts of this case, there is at least a fact question as to whether Alpha is liable on this claim.

Section 39-17-312 is a criminal statute that generally prohibits the abuse or mistreatment of a corpse:

> (a) A person commits an offense who, without legal privilege, knowingly:
> (1) Physically mistreats a corpse in a manner offensive to the sensibilities of an ordinary person;
> (2) Disinters a corpse that has been buried or otherwise interred; or
> (3) Disposes of a corpse in a manner known to be in violation of law.
>
> (b) A person commits an offense who, without legal authority or privilege, knowingly offers to sell, sells, offers to purchase or purchases previously

---

[12](...continued)

negligent. Alpha argues that there was no violation of the statute because it is properly licensed. However, the trial court dismissed this claim only because the Plaintiffs failed to submit expert proof on damages, and we have reversed the grant of summary judgment on this basis. We decline to address other issues not addressed by the trial court in the first instance.

[13]The Plaintiffs argue on appeal that the trial court erred in dismissing their claim for negligence per se for violation of the Arkansas State Board of Embalmer's Regulation because the evidence demonstrated that the Chapel Hill Crematory did not have the documents necessary to perform a lawful cremation in Arkansas. Alpha argues that there was no violation of the regulation. However, the trial court dismissed this claim only because the Plaintiffs failed to submit expert proof on damages, and we have reversed the grant of summary judgment on this basis. We decline to address other issues not addressed by the trial court in the first instance.

buried human skeletal remains. Any remains seized in violation of this subsection (b) shall be confiscated and subject to disposition as provided for in §§ 11-6-104 and 11-6-119.

(c) A violation of this section is a Class E felony.

Tenn. Code Ann. § 39-17-312.

At the outset, we note that the trial court's conclusory explanation of its decision — that summary judgment is warranted because "there is no evidence to support" the claim — falls short of satisfying its obligation to "state the legal grounds upon which the court denies or grants the motion" for summary judgment. Tenn. R. Civ. P. 56.04; *see Winn v. Welch Farm, L.L.C.*, No. M2009-01595-COA-R3-CV, 2010 WL 2265451, at *5-6 (Tenn. Ct. App. June 4, 2010) (noting that, when the trial court has not given a basis for its decision, "[a]t best we would be speculating as to the reasoning behind the trial court's decision and the facts it considered"). It is difficult to determine whether the trial court was focused on a particular element of the claim. We can only surmise that the trial court granted summary judgment in favor of Alpha based on a general deficiency in the Plaintiffs' proof at the time the order was entered. As we have indicated, under the Supreme Court's summary judgment standard in *Hannan*, this is not an appropriate basis on which to grant summary judgment. Under *Hannan*, simply pointing to a general deficiency in the proof does not fulfill the moving party's burden to either *negate* an element of the Plaintiffs' claim or show that the Plaintiffs *cannot* prove an element of the claim. Because Alpha did not carry this burden, the grant of summary judgment on the claim of negligence per se for violation of Section 39-17-312 (Count 1(c)) must be reversed.[14]

**Mutilation of a Body (Count 2)**

The Plaintiffs also challenge the grant of summary judgment as to their claim for the intentional, reckless, or negligent mutilation of a body (Count 2). The trial court granted summary judgment on this claim in the same ruling in which it granted summary judgment on Count 1(c). The order stated only that "there is no evidence to support and Plaintiffs are unable to prove that Defendant Alpha mutilated the body" of the decedent. The Plaintiffs again argue that the trial court erred because the evidence and all inferences therefrom must be viewed in a light most favorable to them, and that, based on the undisputed facts of this case, there is at least a fact question as to whether Alpha is liable on this claim.

---

[14]Alpha argues that there is no evidence in the record that its actions were "knowing," a necessary element to a finding that they violated Section 39-17-312. The trial court did not specifically address this issue. Regardless, as detailed herein, under *Hannan*, this argument is without merit.

-22-

In ***Crawford v. J. Avery Bryan Funeral Home, Inc.***, 253 S.W.3d 149, 157-58 (Tenn. Ct. App. 2007), this Court utilized the description of the tort of "mutilation" set forth in the Restatement:

> One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body.

***Crawford***, 253 S.W.3d at 157-58 (emphasis added) (quoting Restatement (Second) of Torts § 868 (1977)). Tennessee courts have also placed limits on who would have standing to bring a claim for mutilation of a decedent's body; the courts have generally concluded that such a claim may be brought only by the person or persons who have the right to control the disposition of the decedent's body. ***Id.*** at 157.

Interestingly, pre-***Camper*** courts noted that the "physical damages requirement" that would ordinarily accompany a claim for mental distress is relaxed in the context of the tort of mutilation. ***See id.*** at 158 (quoting Restatement (Second) of Torts § 868, cmt. a (1979) ("In practice the technical right has served as a mere peg upon which to hang damages for the mental distress inflicted upon the survivor; and in reality the cause of action has been exclusively one for the mental distress. . . . There is no need to show physical consequences of the mental distress.")); ***see also Seals v. H & F, Inc.***, 301 S.W.3d 237, 243 (Tenn. 2010) (noting that Tennessee "has protected the interests of survivors by permitting claims in tort for emotional suffering" in the wrongful disposal of a body context); ***Hill v. Travelers' Ins. Co.***, 294 S.W. 1097, 1098 (Tenn. 1927) (summarizing ***Taylor v. Bearden***, 6 Tenn. Civ. App. 33, in which damages for mental suffering and anguish were awarded to the plaintiff against the defendant, an undertaker, because of his negligent performance of his contract to properly embalm the body of plaintiff's wife).

As with Count 1(c), the trial court's conclusory explanation of the basis for its decision — that summary judgment is warranted because "there is no evidence to support" the claim — does not satisfy its obligation to "state the legal grounds upon which the court denies or grants the motion" for summary judgment. ***See Winn***, 2010 WL 2265451, at *5. As with the ruling on Count 1(c), the trial court's decision appears based on the general insufficiency of the Plaintiffs' proof on this claim at the time the order was entered. Under ***Hannan***, this is not sufficient to sustain a grant of summary judgment; simply pointing to a general deficiency in the proof does not fulfill the movant's burden to either *negate* an element of the Plaintiffs' claim or show that the Plaintiffs *cannot* prove an element of the claim. Because Alpha did not carry this burden, the grant of summary judgment in favor of Alpha on the claim of mutilation must be reversed.

-23-

**Negligent and Intentional Misrepresentation (Counts 8 and 9)**

The Plaintiffs next challenge the trial court's grant of summary judgment in favor of Alpha on their claims of negligent and intentional misrepresentation. The stated reason for the trial court's grant of summary judgment on these claims was that the Plaintiffs are "unable to prove that Defendant Alpha provided information meant to guide [the Plaintiffs] in their decision making process and are further unable to prove that they relied upon representations of Defendant Alpha in making their decisions." The Plaintiffs argue that the trial court erred in granting summary judgment on this basis, because credible evidence showed that Mr. Newsome, Alpha's owner and operator, admitted that he altered the cremation authorization by writing the name of Chapel Hill Crematory on it, and some evidence indicated that Mr. Newsome may have forged the Plaintiffs' signatures on the authorization form. Plaintiffs claim that they relied on Alpha to act according to the instructions they gave to Mr. Murphy, but Alpha failed to do so. The Plaintiffs contend: "Alpha's addition of untruthful and unauthorized information to the cremation authorization that was concealed from the Plaintiffs upon which a third-party relied in cremating Ms. Boals' body caused injury to Plaintiffs by denying them the opportunity to conduct a final viewing of their love one's body." Therefore, they argue, the trial court erred in granting summary judgment on these counts.

To recover for intentional misrepresentation, a plaintiff must prove:

> (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

*Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012) (citing *Walker v. Sunrise Pontiac–GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (quoting *Metro. Gov't of Nashville & Davidson Cnty. v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992))).

In a suit for negligent misrepresentation, Tennessee utilizes the guiding principles set forth in the Restatement (Second) of Torts § 552. *Id.* at 344-45 (citing *Bethlehem Steel Corp. v. Ernst & Winney*, 822 S.W.2d 592, 595 (Tenn. 1991); *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 433 (Tenn. 1991)). The Restatement provides:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, *supplies false information for the guidance of others in their business transactions*, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552(1) (emphasis added), ***quoted in Hodge,*** 382 S.W.3d at 344-45; ***see Bennett v. Trevecca Nazarene Univ.***, 216 S.W.3d 293, 300-01 (Tenn. 2007) (relying on Section 552 of the Restatement).

Thus, negligent misrepresentation and intentional misrepresentation have some common elements; both require proof that the defendant made a representation that was false, and proof that the plaintiff relied on the misrepresentation to his detriment. The trial court in this case granted summary judgment in favor of Alpha because the Plaintiffs could not show that Alpha provided information that was meant to guide *the Plaintiffs* in their decision-making process, or that the Plaintiffs ever knew of or relied upon those misrepresentations in any way. We agree with the trial court. It is undisputed in this case that the Plaintiffs dealt with Mr. Murphy in making the arrangements for Ms. Boals' remains. After these discussions, Mr. Murphy dealt with Mr. Newsome at Alpha; the Plaintiffs did not. Even assuming for purposes of appeal that Mr. Newsome falsified documents to procure an unauthorized cremation of Ms. Boals' body, there is no allegation that Mr. Newsome's representations were intended to influence the Plaintiffs in their decision making, or that the Plaintiffs ever knew about or relied upon those misrepresentations to their detriment. Under these circumstances, the undisputed facts, even when viewed in a light most favorable to the Plaintiffs, demonstrate that the Plaintiffs cannot prove the element of detrimental reliance in either the negligent misrepresentation claim (Count 8) or the intentional misrepresentation claim (Count 9). Accordingly, we affirm the trial court's grant of summary judgment in favor of Alpha on those claims.

## Punitive Damages

The Plaintiffs argue that the trial court "erred in granting summary judgment on Plaintiffs' claim for punitive damages against Alpha."

In order to address this argument, we must first ascertain the precise ruling on which the Plaintiffs seek review. Neither of the trial court's two orders granting summary judgment in favor of Alpha specifically grant summary judgment in favor of Alpha on any "claim for punitive damages." To be sure, the trial court granted summary judgment on all of the underlying counts alleged in the Plaintiffs' complaint, but the trial court's rulings were all

based on the merits of each claim and the Plaintiffs' inability to establish the claim. The appellate record includes an order entered by the trial court on January 15, 2013, after the notice of appeal was filed, in which the trial court granted in part the *Murphy Defendants'* motion for summary judgment. In that order, the trial court granted summary judgment "for the additional claims for intentional misrepresentation, and fraud, and punitive damages." No such ruling, however, was made in the orders granting summary judgment to Alpha.

Furthermore, the Plaintiffs did not link their request for punitive damages to any specific count in their complaint. Rather, they made a broad request for punitive damages in the prayer portion of their complaint based on "the intentional violation[s] and reckless disregard of the statutes alleged above, and the reckless and/or intentional acts and omissions as set forth herein." The Plaintiffs also alleged that punitive damages are warranted based on the defendants' "intentional disregard and/or reckless indifference for the Plaintiffs' right to control the disposition of the human remains of their deceased mother."

Given this procedural posture, it is unclear whether the trial court intended to include any request for punitive damages in its grant of summary judgment in favor of Alpha. As we have emphasized, under *Hannan,* a grant of summary judgment based on insufficient evidence would be improper.[15] It is well settled that, in order to recover punitive damages, the Plaintiffs must show by clear and convincing evidence that Alpha acted intentionally, fraudulently, maliciously, or recklessly. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992); *see also Rogers*, 367 S.W.3d at 211 n.14 (noting that an award of punitive damages is limited to "the most egregious cases" and is proper only where there is clear and convincing proof that the defendant has acted either "intentionally, fraudulently, maliciously, or recklessly" under *Hodges*). Because we have reversed the grant of summary judgment on several of the Plaintiffs' claims, we merely clarify that the Plaintiffs are not precluded on remand from seeking punitive damages on any of the claims that are otherwise viable and that involve the type of conduct that would support an award of punitive damages.

### Serious and Severe Emotional Injuries

Alpha argues on appeal that, even aside from all of the other arguments, summary judgment should have been granted on all of the Plaintiffs' claims because they cannot show that their

---

[15]Alpha argues that it is entitled to summary judgment on the Plaintiffs' claim for punitive damages because "there is no clear and convincing evidence that it was Alpha's objective or intent to cause harm to Plaintiffs," or that Alpha's conduct was "reckless," or that "Alpha was malicious, as there is no evidence that it was motivated by ill-will, hatred, or personal spite." As set forth above, arguing that the evidence is not sufficient to prove Alpha's intent does not satisfy the *Hannan* standard for summary judgment. Therefore, even if summary judgment had been granted on that basis, it would have been inappropriate.

emotional injuries were sufficiently serious or severe to support their claim for damages. In the trial court's January 15, 2013 order, entered after the notice of appeal was filed, the trial court held that, as to the *Murphy Defendants*, "the undisputed material facts demonstrate that Plaintiffs did not suffer a serious or severe mental or emotional injury." It then granted partial summary judgment to the Murphy Defendants on that basis. The trial court did not, however, make the same ruling as to Alpha in the orders involved in this appeal. Therefore, we decline to address it.

### Inconsistent Rulings

The trial court granted summary judgment to Alpha on all of the Plaintiffs' claims, but it denied summary judgment to the Murphy Defendants on some of the claims. In this appeal, the Plaintiffs argue that the trial court erred in making inconsistent rulings with respect to Alpha and the Murphy Defendants, because Alpha was simply acting as an agent for the Murphy Defendants. They argue that "both the agent and his principal are liable for the wrongful act of the former when committed within the scope of the agent's authority, or ratified by the principal if the act is not within the scope of such authority." *See Allied Sound, Inc. v. Neeley*, 909 S.W.2d 815, 821 (Tenn. Ct. App. 1995). In essence, the Plaintiffs seek a ruling from this Court that Alpha is the agent of the Murphy Defendants, and that Alpha is, therefore, vicariously liable for any wrongdoing of the Murphy Defendants.

As noted by Alpha in its appellate brief, the issue of vicarious liability was not raised in the Plaintiffs' initial or amended complaint. The record on appeal indicates that the issue of vicarious liability was first raised in the Plaintiffs' opposition to Alpha's motion for summary judgment. Therefore, it is questionable whether this issue is even properly before this Court. In addition, the trial court did not address the Plaintiffs' argument regarding vicarious liability in either of its orders granting summary judgment to Alpha.

We have reversed several of the trial court's rulings on summary judgment. At this juncture, we decline to address whether the trial court's rulings were inconsistent, or whether Alpha is vicariously liable for the conduct of the Murphy Defendants for the purpose of determining whether the trial court's orders were, in fact, inconsistent.

All arguments raised by the parties that were not specifically addressed herein are either rejected or are pretermitted by our decision.

### CONCLUSION

The decision of the trial court is affirmed in part and reversed in part as set forth above, and remanded for further proceedings consistent with this opinion. Costs on appeal are to be

taxed equally, one-half to Appellants Carey B. Boals, Jr., and Kim Hickerson and their surety, and one-half to Appellee Alpha Mortuary Service, LLC.

_____

HOLLY M. KIRBY, JUDGE